IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

DANIEL THOMAS HARVEY,

        Plaintiff,                  No. CIV S-10-1653 KJM EFB PS

    vs.

CITY OF SOUTH LAKE TAHOE;
EL DORADO COUNTY; ANDREW
EISSINGER; CHARLES DUKE,
                                      ORDER AND
        Defendants.           FINDINGS AND RECOMMENDATIONS

_____/

       This action, in which plaintiff is proceeding pro se, is before the undersigned pursuant to Eastern District of California Local Rule 302(c)(21). *See* 28 U.S.C. § 636(b)(1). Presently before the court are (1) defendant El Dorado County's motion to dismiss plaintiff's second amended complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6), Dckt. No. 40, and (2) defendants City of South Lake Tahoe, Officer Andrew Eissinger, and Officer Charles Duke's motion to dismiss the second amended complaint pursuant to Rules 8(a), 10(b), and 12(b)(6), Dckt. No. 39. Plaintiff opposes the motions. Dckt. Nos. 43, 44.

////

////

1

For the reasons stated herein, it is recommended that the motions to dismiss be granted but that plaintiff be granted leave to amend some of his claims, as set forth below.[1]

I. BACKGROUND

In September 2011, plaintiff's first amended complaint was dismissed with leave to amend some of his claims. Dckt. No. 35; *see also* Dckt. No. 33 at 18. Specifically, plaintiff's claims against El Dorado Superior Court and his claims for violation of California Penal Code sections 182, 484, and 849(b)(1) and 18 U.S.C. § 1503 were dismissed without leave to amend; all other claims were dismissed with leave to amend. *Id.*

Thereafter, plaintiff filed a second amended complaint, alleging claims under 42 U.S.C. § 1983 against El Dorado County and against the City of South Lake Tahoe, South Lake Tahoe Police Officer Andrew Eissinger, and South Lake Tahoe Police Officer Charles Duke (collectively, "the City defendants"). Second Am. Compl. ("SAC"), Dckt. No. 38. Plaintiff alleges that on March 18, 2010, he was bitten by a dog belonging to James Handley, and when he informed Mr. Handley of the bite, Mr. Handley "took his dog by leash and fled." *Id.* at 3. Plaintiff contends that because he feared that if he did not obtain the dog's vaccination information he would "need to undergo preventative rabies treatment," he "used his bicycle and pushed Mr. Handley off of his skateboard" to stop Mr. Handley from leaving. *Id.* at 5. Officers Eissinger and Duke arrested plaintiff after arriving at the scene and interviewing witnesses. *Id.* at 5-6.

Plaintiff's second amended complaint alleges that "[t]he case originated from a false arrest after a minor dog bite incident" and resulted in "excessive bail" and a violation of "plaintiff's 5th and 14th amendment right[s] to due process." *Id.* at 1. More specifically, plaintiff alleges that Officers Eissinger and Duke "agreed to frame the plaintiff and perpetrated a

---

[1] Although plaintiff requested a hearing on the motions to dismiss, because the court determined that oral argument would not be of material assistance, the hearing on the motions was vacated. *See* E.D. Cal. L.R. 230(g). Therefore, plaintiff's requests will be denied.

2

1  false arrest." *Id*.  Plaintiff claims that Officer Eissinger violated his right to due process by

2  bringing "his false statements to the court [violating] plaintiff's 8th amendment right . . . and

3  caused excessive bail." *Id*. at 2.  Specifically, plaintiff contends Officer Eissinger "falsely

4  omitted the flight of the dog owner" even though he "understood [plaintiff] had not committed

5  robbery [but] simply lied saying 'Suspect later carried the skateboard away.'" *Id.* at 7.  Plaintiff

6  alleges that defendant City of South Lake Tahoe is "responsible for training and supervising its

7  police officers," "does not discipline police officers whom demonstrate misconduct," and have a

8  "policy of arresting innocent men and bringing false charges against them." *Id.* at 11-12.

9  Furthermore, plaintiff claims that the City of South Lake Tahoe "hires a majority of its police

10 officers from the State of Nevada" and these officers "hold no personal interest in maintaining

11 the rights of the citizens of South Lake Tahoe California." *Id.* at 10.  Plaintiff continues that

12 because of the out of state hiring, "police officers are indifferent towards the rights of men whom

13 live in South Lake Tahoe[, and] act without conducting a proper investigation [and] without

14 considering that the women are lying." *Id.* at 10, 11.  Plaintiff attempts to prove this

15 indifference by describing three incidents where "women lie, and then their lies are used [by

16 police] to frame [plaintiff]." *Id.* at 2.

17        In his second amended complaint, plaintiff also seeks to hold El Dorado County liable for

18 the conduct of certain El Dorado County jail employees.  He claims that those employees acted

19 to extract an "excessive bail" of $80,000 from plaintiff by holding him "in a cold holding cell

20 without adequate clothing, but while at the same time being provided bail bond information." *Id.*

21 at 14.  Plaintiff further claims that the "jail employees learned of the plaintiff's ability to post a

22 larger bond then increased the bond" while acting "in alliance with the police officers." *Id.*

23 Finally, plaintiff alleges that the jail employees denied him "his right to a bail hearing." *Id.*

24 II.    <u>EL DORADO COUNTY'S MOTION TO DISMISS</u>

25        Defendant El Dorado County moves to dismiss plaintiff's second amended complaint for

26 failure to state a claim pursuant to Rule 12(b)(6).  Dckt. No. 40.

A. <u>Legal Standards</u>

To survive dismissal for failure to state a claim pursuant to Rule 12(b)(6), a complaint must contain more than a "formulaic recitation of the elements of a cause of action"; it must contain factual allegations sufficient to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "The pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." *Id*. (quoting 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1216, pp. 235-236 (3d ed. 2004)). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. Dismissal is appropriate based either on the lack of cognizable legal theories or the lack of pleading sufficient facts to support cognizable legal theories. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

In considering a motion to dismiss, the court must accept as true the allegations of the complaint in question, *Hospital Bldg. Co. v. Rex Hosp. Trs.*, 425 U.S. 738, 740 (1976), construe the pleading in the light most favorable to the party opposing the motion, and resolve all doubts in the pleader's favor. *Jenkins v. McKeithen*, 395 U.S. 411, 421, *reh'g denied*, 396 U.S. 869 (1969). The court will "'presume that general allegations embrace those specific facts that are necessary to support the claim.'" *Nat'l Org. for Women, Inc. v. Scheidler*, 510 U.S. 249, 256 (1994) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)). The court may consider facts established by exhibits attached to the complaint. *Durning v. First Boston Corp.*, 815 F.2d 1265, 1267 (9th Cir. 1987). The court may also consider facts which may be judicially noticed, *Mullis v. U.S. Bankr. Ct.*, 828 F.2d at 1388, and matters of public record, including pleadings, orders, and other papers filed with the court. *Mack v. South Bay Beer Distribs.*, 798 F.2d 1279, 1282 (9th Cir. 1986).

4

Pro se pleadings are held to a less stringent standard than those drafted by lawyers. *Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Bretz v. Kelman*, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985). However, the court's liberal interpretation of a pro se litigant's pleading may not supply essential elements of a claim that are not plead. *Pena v. Gardner*, 976 F.2d 469, 471 (9th Cir. 1992); *Ivey v. Bd. of Regents of Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982). Furthermore, "[t]he court is not required to accept legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged." *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994). Neither need the court accept unreasonable inferences, or unwarranted deductions of fact. *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981). A pro se litigant is, however, entitled to notice of the deficiencies in the complaint and an opportunity to amend, unless the complaint's deficiencies could not be cured by amendment. *See Noll v. Carlson*, 809 F.2d 1446, 1448 (9th Cir. 1987).

B.    Discussion

1.    Municipal Liability Against El Dorado County

Plaintiff alleges a § 1983 municipal liability claim against El Dorado County, arguing that certain El Dorado County jail employees violated plaintiff's Eighth Amendment rights by acting in alliance with police officers to extract an excessive bail from plaintiff and by denying plaintiff a bail hearing. SAC at 14. El Dorado County seeks dismissal of plaintiff's municipal liability claim, arguing that plaintiff has failed to state a claim under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978), since he has failed to allege any policy or custom by the County in his second amended complaint. Dckt. No. 40 at 8.

There is no respondeat superior liability under § 1983. Therefore, counties and municipalities may be sued under § 1983 only upon a showing that an official policy or custom caused the constitutional tort. *See Monell*, 436 U.S. at 691. In order to state a claim under *Monell*, a party must (1) identify the challenged policy or custom; (2) explain how the policy or custom is deficient; (3) explain how the policy or custom caused the plaintiff harm; and (4)

5

1  reflect how the policy or custom amounted to deliberate indifference, i.e. show how the
2  deficiency involved was obvious and the constitutional injury was likely to occur. *Young v. City*
3  *of Visalia*, 687 F. Supp. 2d 1141, 1149 (E.D. Cal. 2009).

4  Plaintiff has not identified any El Dorado County policy or custom in his second
5  amended complaint, has not alleged that the jail employees acted pursuant to a County policy or
6  custom, and has not alleged that their conduct conformed to an official policy or custom. *See*
7  *Monell*, 436 U.S. at 690-91, 694; *Karim-Panahi*, 839 F.2d at 624; *Shah v. County of Los*
8  *Angeles*, 797 F.2d 743, 746 (9th Cir. 1986). Additionally, because plaintiff has not identified
9  any such policy or custom, plaintiff also has not explained how the policy or custom is deficient,
10 has not explained how the policy or custom caused him harm, and has not explained how the
11 policy or custom amounted to deliberate indifference. Accordingly, plaintiff has not alleged a
12 basis for holding defendant El Dorado County liable for any constitutional deprivations in
13 connection with his arrest or detention. Therefore, plaintiff's claims against the County must be
14 dismissed.

15 Although a pro se litigant is entitled to notice of the deficiencies in the complaint and an
16 opportunity to amend, here plaintiff was given specific instructions on how to plead a *Monell*
17 claim and has again failed to do so in his second amended complaint. In dismissing plaintiff's
18 first amended complaint, the court explained to plaintiff precisely how to allege a *Monell* claim.
19 Dckt. No. 33 at 6. Plaintiff's failure to follow that guidance, and his failure to include *any*
20 allegations in his second amended complaint regarding a policy or custom by the County,
21 suggest that further leave to amend to do so would be futile.[2] *See Ferdik v. Bonzelet*, 963 F.2d

---

[2] Plaintiff contends in his opposition to the County's motion to dismiss that the County trains its employees to act in alliance with local police and that the County acted with the "same intentions as the police" in extracting excessive bail and violating plaintiff's due process rights. Dckt. No. 44 at 2, 3. However, no such allegations are stated in plaintiff's second amended complaint. Nonetheless, even if those allegations were contained in the complaint, they would not be sufficient to state a *Monell* claim against the County since plaintiff does not allege that the County has an official policy, custom, or practice of training its employees to act in alliance with

1258, 1260-61 (9th Cir. 1992); *see also Jimenez v. Sullivan*, 2008 WL 4005940, at *3 (E.D. Cal. Aug. 27, 2008) ("[p]laintiff was already given an opportunity to cure the deficiencies identified by the court in its prior order and she was unable to do so. Thus, it appears granting leave to amend the complaint would be futile"). Therefore, plaintiff's *Monell* claims against the County will be dismissed without leave to amend.

### 2. State Law Claims

El Dorado County also contends that to the extent plaintiff's claims are construed as state law claims, they should be dismissed because plaintiff did not plead compliance with the California Torts Claims Act ("GCA").³ Dckt. No. 40.

The GCA requires that a party seeking to recover money damages from a public entity or its employees must submit a claim to the entity *before* filing suit in court, generally no later than six months after the cause of action accrues. Cal. Gov't Code §§ 905, 911.2, 945, 950.2 (emphasis added); *see also Shirk v. Vista Unified Sch. Dist.*, 42 Cal. 4th 201, 208 (2007) ("*Before* suing a public entity, the plaintiff must present a timely written claim. . .") (emphasis added). "The legislature's intent to require the presentation of claims *before* suit is filed could not be clearer." *City of Stockton v. Super. Ct.*, 42 Cal. 4th 730, 746 (2007). Timely claim presentation is not merely a procedural requirement of the GCA but is an element of a plaintiff's

---

local police or an official policy or custom of extracting excessive bail or of violating due process rights. Nor does plaintiff explain how any such policy, custom, or practice is deficient, caused plaintiff harm, or amounts to deliberate indifference. *Young*, 687 F. Supp. 2d at 1149-50 ("without identifying . . . how those practices were deficient, and without an identification of the obviousness of the risk involved, the Court cannot determine if a plausible claim is made for deliberately indifferent conduct"). Plaintiff also does not adequately allege a failure by the County to properly train its officers. *See City of Canton*, 489 U.S. at 388. Therefore, those allegations do not justify granting plaintiff leave to amend to state a *Monell* claim against the County. *See Broam v. Bogan*, 320 F.3d 1023, 1026 n.2 (9th Cir. 2003) (facts raised in opposition papers may not defeat a motion to dismiss, but may be considered by the court to determine whether dismissal should be with or without leave to amend).

³ In 2007, the California Supreme Court adopted the practice of using the title "Government Claims Act" instead of "California Tort Claims Act." *See City of Stockton v. Superior Court*, 42 Cal. 4th 730, 741-42 (2007).

cause of action. *Shirk*, 42 Cal. 4th at 209. Thus, when a plaintiff asserts a claim subject to the GCA, he must affirmatively allege compliance with the claim presentation procedure, or circumstances excusing such compliance, in his complaint. *Id.* The requirement that a plaintiff asserting claims subject to the GCA must affirmatively allege compliance with the claims filing requirement applies in federal court as well. *Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 627 (9th Cir. 1988).

In dismissing plaintiff's first amended complaint, the court explained to plaintiff precisely how to allege compliance with the GCA. Dckt. No. 33 at 9. Nonetheless, plaintiff still does not allege compliance with the claim presentation procedure of the GCA in his second amended complaint. Rather, plaintiff attempts to excuse that non-compliance. Specifically, he argues that he did not comply with the GCA because "[m]ore than a year" after Deputy District Attorney Lisa Serafini stated no charges would be filed against plaintiff in the dog bite incident, she "spoke at a court hearing and produced a veiled threat to file the false charges against this plaintiff." SAC at 12. However, as the County notes, the alleged threat occurred on September 2, 2011, over a year after the original complaint was filed in federal court.[4] Dckt. No. 40 at 10. As provided above, plaintiff needed to comply with the GCA *before* filing suit in court. Therefore, to the extent there are any state law claims against the County in plaintiff's second amended complaint, those claims should be dismissed without leave to amend for failure to allege compliance with the GCA.

III. CITY DEFENDANTS' MOTION TO DISMISS

The City defendants move to dismiss (1) the City of South Lake Tahoe for failure to state a *Monell* claim, (2) plaintiff's state law claims for failure to plead compliance with the GCA, and (3) plaintiff's remaining claims pursuant to Rules 8(a) and 10(b). Dckt. No. 39.

---

[4] Additionally, El Dorado County argues that "it is unclear as to how [p]laintiff could be too afraid to present a claim to the County pursuant to the GCA . . . but not too afraid to file suit in federal court describing the same subject matter." *Id.* at 11. The undersigned is equally confused by plaintiff's logic.

A. <u>Municipal Liability Against the City of South Lake Tahoe</u>

Plaintiff alleges a § 1983 municipal liability claim against the City of South Lake Tahoe based on the City's failure to train, supervise, and discipline its police officers and based on its "policy of arresting innocent men and bringing false charges against them." SAC at 11-12. Plaintiff also alleges that the City hires a majority of its police officers from outside of California and those officers are indifferent to the rights of citizens living in the City, do not conduct proper investigations, and rely on representations from "lying women." *Id.* at 10, 11. Plaintiff alleges three incidents involving lies from women and those lies being used to frame plaintiff. *Id.* The City of South Lake Tahoe argues that plaintiff's claims against it should be dismissed because plaintiff cannot sufficiently state a municipal liability claim under *Monell*. Dckt. No. 39 at 3-4.

As explained above, because there is no respondeat superior liability under § 1983, municipalities may be sued under § 1983 only upon a showing that an official policy or custom caused the constitutional tort. *See Monell*, 436 U.S. at 691. The first requirement of *Monell* is that "plaintiff must identify a 'policy' or 'custom' that caused the plaintiff injury." *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 403 (1997) (citing *Monell*, 436 U.S. at 694; *Pembaur v. Cincinnati*, 475 U.S. 469, 480-81 (1986); *City of Canton v. Harris*, 489 U.S. 378, 389 (1989)). In justifying the imposition of liability for a municipal custom, the Supreme Court has noted that "an act performed pursuant to a 'custom' that has not been formally approved by an appropriate decisionmaker may fairly subject a municipality to liability on the theory that the relevant practice is so wide-spread as to have the force of law." *Id.* at 404 (citing *Monell*, 436 U.S. at 690-91). Additionally, a custom or practice can be "inferred from widespread practices or 'evidence of repeated constitutional violations for which the errant municipal officers were not discharged or reprimanded.'" *Nadell v. Las Vegas Metro. Police Dep't*, 268 F.3d 924, 929 (9th Cir. 2001) (quoting *Gillette v. Delmore*, 979 F.2d 1342, 1349 (9th Cir. 1992)); *see also Menotti*, 409 F.3d at 1147; *McRorie v. Shimoda*, 795 F.2d 780, 784 (9th Cir. 1986). "A policy is a deliberate choice to follow a course of action . . . made from among various alternatives by the

9

official or officials responsible for establishing final policy with respect to the subject matter in question." *Long v. Cnty. of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006). Alternatively, a single act of a policymaker in some instances can be sufficient for a *Monell* claim when "the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered." *Pembaur*, 475 U.S. at 481-82.

Additionally, the inadequacy of police training may serve as the basis for § 1983 liability against a municipality where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact. *City of Canton*, 489 U.S. at 388. "Deliberate indifference" is established where "'the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." *Clouthier v. County of Contra Costa*, 591 F.3d 1232, 1249 (9th Cir. 2010) (quoting *City of Canton*, 489 U.S. at 390). To survive a motion to dismiss, a civil rights plaintiff alleging *Monell* liability based on a failure to train must allege that: (1) he was deprived of a constitutional right; (2) the local government entity had a training policy that amounts to deliberate indifference to constitutional rights of persons with whom its peace officers are likely to come into contact; and (3) his constitutional injury would have been avoided had the local government unit properly trained those officers. *See Lanier v. City of Fresno*, 2010 WL 5113799 at *11-12 (E.D. Cal. Dec. 9, 2010).

There are four overlapping municipal "policies" plaintiff vaguely alleges in different portions of the second amended complaint. First, plaintiff alleges that the City's hiring practices are injurious to California citizens. Second, plaintiff alleges that the police department has a policy of arresting innocent men and bringing charges against them with the help of "lying women." Third, plaintiff claims that the police department does not discipline its police officers for misconduct. Fourth, plaintiff claims that the police department fails to adequately train and supervise its officers. However, plaintiff never alleges a formal policy or official custom, nor

10

does he allege that a policymaker acted against the plaintiff.  Additionally, his curious allegations against the City "are merely conclusory, unwarranted deductions of fact, or unreasonable inferences," which the court need not accept as true. *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1056-57 (9th Cir. 2008).

First, plaintiff alleges that the City's practice of hiring out of state officers who "hold no personal interest in maintaining the rights of the citizens of South Lake Tahoe California" and who conduct improper investigations and rely on misrepresentations from women constitutes deliberate indifference. SAC at 10-11.  Plaintiff appears to be arguing that because the police officers live out of state, they are deliberately indifferent to the constitutional rights of California citizens. *Id.* However, plaintiff does not allege the City is aware of its officers' alleged indifference or provide any allegations suggesting that they should have known about that alleged indifference.  Plaintiff has not alleged any facts demonstrating "widespread practices or 'evidence of repeated constitutional violations for which the errant municipal officers were not discharged or reprimanded,'" nor has he alleged that a policymaker acted in violation of plaintiff's rights. *Nadell*, 268 F.3d at 929; *Pembaur*, 475 U.S. at 481-82.  Further, plaintiff has not alleged that he was injured by the alleged practice.  Therefore, plaintiff's allegations regarding this "policy" are insufficient to "raise a right to relief above the speculative level" and do not "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 555; *Iqbal*, 129 S. Ct. at 1949

Second, plaintiff alleges that the police department has a policy of arresting innocent men and bringing charges against them with the help of "lying women."  Plaintiff alleges that this policy is demonstrated by the fact that he was twice falsely arrested by City police officers: once in connection with the dog bite incident at issue herein, and then again in August 2011.[5] SAC at 13.  With regard to the dog bite incident, plaintiff alleges that the police officers who arrested

---

[5] Plaintiff alleges he was falsely arrested in 2004, but he does not allege the City defendants were in any way involved in that incident.  SAC at 2.

11

1  and charged plaintiff knew of a witness who would bolster plaintiff's version of the events, but
2  they "deliberately avoided him." *Id.* at 11.  Plaintiff also contends the police department
3  withheld 911 calls from the day of the incident "while attempting to have this case dismissed."
4  *Id.* at 13, 5-6.  Finally, plaintiff alleges that Eissinger and Duke's police reports contained false
5  charges, and that those reports were viewed and approved by other officers, demonstrating that
6  the City of South Lake Tahoe has a policy of arresting and charging innocent men. *Id.* at 12-13.
7  With regard to the August 2011 arrest, plaintiff alleges that he was threatened by "an angry man
8  . . . with bricks in his hands" and that he therefore grabbed a hammer and a pool cue in self-
9  defense.  *Id.* at 3.  Plaintiff alleges that while the police let the other party go free without
10 checking for warrants, they "chose to frame [plaintiff] using the obvious lies of women whom
11 had argued with [plaintiff] and were obviously lying." *Id.* at 3-4.  Plaintiff concludes that
12 because he "defeated the charges without use of an attorney," the police actions were
13 unconstitutional. *Id*.

14     Even if plaintiff could show that his two arrests by South Lake Tahoe police officers
15 amounted to false arrests, he has not alleged that those arrests or the conduct he alleges
16 contributed to the arrests (disregarding an important witness, withholding 911 calls, and relying
17 on improper witness statements) are based on an official policy or practice by the City, that those
18 arrests and/or other allegedly improper conduct resulted from a municipal custom that has been
19 formally approved by an appropriate decisionmaker, or that a decisionmaker with final authority
20 to establish municipal policy played a role in either of plaintiff's arrests.  Nor are the individual
21 incidents plaintiff references sufficient to constitute a "widespread practice" from which a
22 custom could be inferred. *See Meehan v. County of Los Angeles*, 856 F.2d 102, 107 (9th Cir.
23 1998) (two incidents of unconstitutional activity found insufficient to support a finding of
24 municipal liability).  Additionally, although plaintiff alleges that other officers reviewed and
25 approved the police reports at issue, plaintiff does not allege that those officers knew or should
26 have known that the reports contained false charges.  Therefore, plaintiff's factual allegations

12

1  regarding this "policy" are insufficient under *Iqbal* and *Twombly*. *See also Telles v. City of*
2  *Waterford*, 2010 WL 5314360, at *4 (E.D. Cal. Dec. 20, 2010) (to sufficiently state a claim
3  under *Monell*, plaintiff must allege facts establishing a policy, it is not enough simply to state
4  that there is a policy).

5  Third, plaintiff contends that the City's police department fails to properly discipline its
6  officers who engage in misconduct. SAC at 11. According to plaintiff, this is demonstrated by
7  the fact that "Eissinger and [Duke] framed [plaintiff]," yet no disciplinary actions were taken
8  against them. *Id*. If a municipality could be held liable for failure to discipline its employees for
9  the exact conduct cited in plaintiff's complaint, then the municipality would have what amounts
10 to respondeat superior liability. Logically, there must be proof of previous unconstitutional
11 conduct where the municipality failed to discipline its employees, indicating a policy or practice.
12 *See Berry v. McLemore*, 670 F.2d 30, 33-34 (5th Cir. 1982) (failure to discipline claims must be
13 based on incidents occurring prior to the incident at issue, otherwise there is no causal
14 connection between the failure to discipline and the harm). Therefore, plaintiff's allegation that
15 the City failed to discipline its officers is insufficient to state a *Monell* claim against the City.

16 Fourth, plaintiff alleges that the police department has failed to properly supervise and
17 train its officers and that the officers' "conduct has gone far beyond negligence, as this was a
18 conspiracy." SAC at 13. However, that conclusory allegation is insufficient to state a *Monell*
19 claim. Plaintiff does not allege that the City has a training policy that amounts to deliberate
20 indifference, nor does he allege that his injury would have been avoided by proper training. The
21 undersigned "is not required to accept legal conclusions cast in the form of factual allegations if
22 those conclusions cannot reasonably be drawn from the facts alleged." *Clegg* 18 F.3d at 754-55.

23 Accordingly, none of the theories plaintiff alleges in support of his *Monell* claim against
24 the City is sufficient. While plaintiff attempts to follow the court's instructions in alleging his
25 *Monell* claim against the City, as demonstrated above, he only offers "threadbare conclusions"
26 regarding alleged policies, customs, and practices by the City. *See Young,* 687 F. Supp. 2d at

1150.  Moreover, the vague policies, customs, and practices that plaintiff does allege are based on contradicting theories.  *See Baker v. Rodriguez*, 2011 WL 4529644, at *6 (C.D. Cal. Sept. 29, 2011) (contradictory allegations are not sufficient to identify a challenged policy, custom, or practice).  At times plaintiff alleges that the City has a policy of bringing charges against innocent men and other times alleges that Eisinger and Duke "chose to frame" plaintiff and it was their "preference to use the false statements and lies of the woman."  SAC at 4, 8.  Furthermore, it is unclear which alleged policy, custom, or practice plaintiff alleges caused his injury or if they were all part of a general failure by the City of South Lake Tahoe.  *See* SAC at 10-12.  A complaint "may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively ."  *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).  Because plaintiff fails to allege specific underlying facts that, if true, are cognizable under section 1983, nor does he allege a specific policy, custom, or practice and instead relies on threadbare conclusions that merely track the *Monell* requirements.  Accordingly,  plaintiff's *Monell* claims against the City of South Lake Tahoe should be dismissed.  However, because plaintiff attempted to state a *Monell* claim against the City in his second amended complaint (unlike the County, as discussed above), and it is not apparent to the court that amendment would be futile, plaintiff will be provided one final opportunity to amend his complaint to state a *Monell* claim against the City.

   B. <u>State Law Claims</u>

   The City defendants argue that any allegations based on California state law should be barred for failure to allege compliance with the GCA.  As discussed above, the GCA requires that a party seeking to recover money damages from a public entity or its employees must submit a claim to the entity before filing suit in court, generally no later than six months after the cause of action accrues, and must affirmatively allege compliance with the claim presentation procedure, or circumstances excusing such compliance, in his complaint.  Cal. Gov't Code §§ 905, 911.2, 945, 950.2 (emphasis added); *see also Shirk*, 42 Cal. 4th at 208, 209.  To the

14

extent plaintiff alleges state law claims against the City defendants, plaintiff is obligated to allege compliance with the claim presentation procedure of GCA in his complaint.  Here, the second amended complaint lacks any allegations that plaintiff presented his claims to the City defendants before filing suit.

The court previously ordered "any state law claims plaintiff purports to allege against the City defendants should be dismissed with leave to amend, to the extent that plaintiff can allege that he filed claims with the City defendants prior to filing suit." Dckt. No. 33 at 16-17. Plaintiff has failed to comply with that order, as he has not alleged that he filed claims with the City defendants prior to filing suit.  Plaintiff's second amended complaint does not argue that he complied with the GCA; rather, he attempts to excuse his non-compliance based on an alleged threat he received from a deputy district attorney.  However, as noted above, the alleged threat occurred over a year after the original complaint was filed in federal court, and plaintiff needed to comply with the GCA before filing suit.  Therefore, the alleged threat does not excuse plaintiff's non-compliance with the GCA.  Accordingly, plaintiff's state law claims against the City defendants must be dismissed without leave to amend.

C.  Plaintiff's Remaining Federal Claims

The City defendants further contend that plaintiff's first amended complaint is not "short and plain" or "simple, concise, and direct," as required by Rules 8(a) and 8(d)(1).  Dckt. No. 39-1 at 4 (quoting Fed. R. Civ. P. 8(a), 8(d)(1)).  They also contend that plaintiff's second amended complaint is not in compliance with Rule 10(b) since plaintiff's claims are not set forth "in numbered paragraphs, each limited as far as practicable to a single set of circumstances." *Id.* at 5 (quoting Fed. R. Civ. P. 10(b)).

Because the undersigned agrees that plaintiff's second amended complaint fails to comply with Rules 8 and 10, primarily because plaintiff's complaint does not clearly allege the basis for plaintiff's federal claims against defendants Eissinger and Duke, to the extent plaintiff's second amended complaint includes such federal claims, those claims are dismissed with leave

15

to amend pursuant to Rules 8 and 10.

IV.     LEAVE TO AMEND

If plaintiff elects to file a third amended complaint as authorized herein, plaintiff must comply with the requirements of Rules 8(a) (i.e., that the complaint set forth a short and plain statement of the claim(s), showing entitlement to relief and giving the defendant(s) fair notice of the claim(s) against them) and 10(b) (i.e., if plaintiff has more than one claim based upon separate transactions or occurrences, the claims must be set forth in separate paragraphs). Additionally, the complaint shall also use clear headings to delineate each claim alleged and against which defendant or defendants the claim is alleged, as required by Rule 10(b), and must plead clear facts that support each claim under each header. The complaint shall not add new claims or new defendants.

Regarding plaintiff's *Monell* claims against the City of South Lake Tahoe, plaintiff must allege facts sufficient to show a specific *Monell* policy, practice, or custom. Plaintiff must (1) identify the challenged policy or custom; (2) explain how the policy or custom is deficient; (3) explain how the policy or custom caused the plaintiff harm; and (4) reflect how the policy or custom amounted to deliberate indifference, i.e. show how the deficiency involved was obvious and the constitutional injury was likely to occur. *Young*, 687 F. Supp. 2d at 1149. Plaintiff can argue in the alternative, but should not make contradictory allegations regarding a policy, custom, or practice. Plaintiff must make more then threadbare allegations that simply track the *Monell* claim requirements. *Iqbal*, 129 S. Ct. at 1949.

Plaintiff is reminded that the court cannot refer to a prior pleading in order to make his third amended complaint complete. Local Rule 220 requires that an amended complaint be complete in itself without reference to any prior pleading. This is because, as a general rule, an amended complaint supersedes the original complaint. *See Loux v. Rhay*, 375 F.2d 55, 57 (9th Cir. 1967). Failure to file a third amended complaint will result in a recommendation that this action be dismissed.

16

V.     CONCLUSION

Accordingly, IT IS HEREBY ORDERED that plaintiff's requests for a hearing, Dckt. Nos. 48 and 49, are denied.

IT IS FURTHER RECOMMENDED that:

1. Defendant El Dorado County's motion to dismiss, Dckt. No. 40, be granted without leave to amend.

2. The City defendants' motion to dismiss, Dckt. No. 39, be granted as follows:

    a.   Any *Monell* claims against the City of South Lake Tahoe be dismissed with leave to amend.

    b.   Any state law claims be dismissed without leave to amend;

    c.   Any remaining federal claims against Officers Eissinger and Duke be dismissed with leave to amend as provided above.

3. Plaintiff be provided thirty days from the date any order adopting these findings and recommendations is filed to file a third amended complaint as provided herein.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

DATED: April 12, 2012.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE