IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

DANIEL THOMAS HARVEY,

    Plaintiff,

   vs.

CITY OF SOUTH LAKE TAHOE;
EL DORADO COUNTY; ANDREW
EISSINGER; CHARLES DUKE,

    Defendants.

_____/

No. 2:10-cv-1653-KJM-EFB PS

ORDER AND
FINDINGS AND RECOMMENDATIONS

DANIEL THOMAS HARVEY,

    Plaintiff,

   vs.

CITY OF SOUTH LAKE TAHOE;
DOUGLAS COUNTY; EL DORADO
COUNTY; ROBERT K. PRISCARO;
JAKE HERMINGHAUS; SHANNON
LANEY; ANDREW EISSINGER,

    Defendants.

_____/

No. 2:12-cv-526-KJM EFB PS

ORDER AND
FINDINGS AND RECOMMENDATIONS

     These two actions, in which plaintiff is proceeding pro se, are before the undersigned

pursuant to Eastern District of California Local Rule 302(c)(21).  *See* 28 U.S.C. § 636(b)(1).

1

The actions were determined to be related within the meaning of Local Rule 123(a) on May 4, 2012 and they were reassigned to the same judges, *Harvey v. City of South Lake Tahoe, et al.*, 2:10-cv-1653-KJM-EFB (the "first action"), Dckt. No. 52; *Harvey v. City of South Lake Tahoe, et al.*, 2:12-cv-526-KJM-EFB (the "second action"), Dckt. No. 17.  The complaints describe plaintiff's ongoing disputes with law enforcement for the City of South Lake Tahoe and the County of El Dorado arising out of his contacts with law enforcement on March 18, 2010 and August 28, 2011.  Although the actions have not been consolidated pursuant to Federal Rule of Civil Procedure 42(a), the pending motions to dismiss in each action raise similar and related issues and are jointly addressed in this order and recommendation, which will be filed in each action.

In the first action, defendants City of South Lake Tahoe (the "City"), South Lake Tahoe Police Officer Andrew Eissinger, and South Lake Tahoe Police Officer Charles Duke move to dismiss plaintiff's third amended complaint pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6) for failure to comply with Rules 8(a) and 10(b).  Dckt. No. 63.  Plaintiff opposes the motion.[1]  Dckt. No. 66; *see also* Dckt. Nos. 70, 71.

In the second action, there are three motions to dismiss pending: (1) a Rule 12(b)(6) motion to dismiss filed by the City of South Lake Tahoe (the "City"), South Lake Tahoe Police Officer Andrew Eissinger, South Lake Tahoe Police Officer Jake Herminghaus, and South Lake Tahoe Police Officer Shannon Laney, Dckt. Nos. 4, 5; (2) a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction filed by Douglas County, Nevada, Dckt. No. 8; and (3) a Rule 12(b)(6) motion to dismiss filed by El Dorado County and an El Dorado County prosecutor Robert Priscaro, Dckt. No. 19.  Plaintiff opposes all three motions.  Dckt. Nos. 9, 10, 25.

////

---

[1] The court has determined that oral argument would not be of material assistance and hearing on the motion was vacated.  *See* E.D. Cal. L.R. 230(g).  Therefore, plaintiff's request for a hearing, Dckt. No. 72, will be denied.

For the reasons stated herein, it is recommended that the motion to dismiss in the first action be granted, that the motions to dismiss in plaintiff's second action be granted, and that plaintiff be provided leave to amend in the first action but not in the second action.

I.    PROCEDURAL HISTORY

    A.    First Action, 2:10-cv-1653

Plaintiff initially filed this action in June 2010 against the City of South Lake Tahoe, Officers Eissinger and Duke, and the County of El Dorado, alleging a claim under 42 U.S.C. § 1983 and various state law claims. Dckt. No. 1. After the County moved to dismiss the complaint, plaintiff filed a first amended complaint. Dckt. No. 13. The court construed that first amended complaint as a motion to amend and granted it. Dckt. No. 15. Thereafter, the County once again moved to dismiss the amended complaint, Dckt. No. 16, and the City, Eissinger, and Duke moved to dismiss, to strike, and for a more definite statement. Dckt. No. 17. The court granted the motions to dismiss and granted plaintiff leave to amend some of his claims. Dckt. Nos. 33, 35.

Then, on October 19, 2011, plaintiff filed a second amended complaint. Dckt. No. 38. The County moved to dismiss, Dckt. No. 40, as did the City, Eissinger, and Duke, Dckt. No. 39. Again, the court granted the County's motion to dismiss and dismissed the claims against the County without leave to amend. Dckt. Nos. 50, 56. The court also granted the City defendants' motion to dismiss, dismissed plaintiff's state law claims against those defendants without leave to amend, and dismissed plaintiff's *Monell* claims against the City and plaintiff's federal claims against Eissinger and Duke with leave to amend. *Id.*

Plaintiff has now filed a third amended complaint against the City, Eissenger, and Duke, Dckt. No. 57, which those defendants move to dismiss, Dckt. No. 63.

    B.    Second Action, 2:12-cv-526

Plaintiff filed the second action in February 2012 against the City of South Lake Tahoe; Douglas County, Nevada; El Dorado County, California; Robert K. Priscaro; and City of South

1  Lake Tahoe Officers Jake Herminghaus, Shannon Lacey, and Andrew Eissinger, alleging a claim

2  under 42 U.S.C. § 1983 against all of the defendants and a defamation claim against Douglas

3  County.  Compl., Dckt. No. 1.  Each of the defendants moves to dismiss that complaint.  Dckt.

4  Nos. 4, 8, 19.

5  II.     FACTUAL ALLEGATIONS

6         A.     First Action, 2:10-cv-1653

7         Plaintiff's third amended complaint in the first action asserts claims under 42 U.S.C.

8  § 1983 against the City of South Lake Tahoe, South Lake Tahoe Police Officer Andrew

9  Eissinger, and South Lake Tahoe Police Officer Charles Duke, alleging that they violated his

10  Eighth Amendment right to be free from excessive bail and his Fifth and Fourteenth Amendment

11  rights to due process.  Third Am. Compl. ("TAC"), Dckt. No. 57.

12         The underlying basis for the first action is what plaintiff calls the "Dog Bite Incident."

13  *Id.* at 3, 4.  Plaintiff alleges that on March 18, 2010, he was bitten by a dog belonging to James

14  Handley, and when he informed Mr. Handley of the bite, Mr. Handley "then fled taking his dog

15  away with him."  *Id*. at 6.  Plaintiff contends that because he feared that if he did not obtain the

16  dog's vaccination information "he would have to undergo rabies treatment," he followed Mr.

17  Handley on his bicycle.  *Id.*  Because Mr. Handley "refused to stop while he used his skateboard

18  to flee," plaintiff then "used his bicycle and pushed [Mr. Handley] off of the skateboard."  *Id.*

19  Plaintiff then grabbed the skateboard and waited for the police, along with Mr. Handley.  *Id.*

20         Plaintiff alleges that Officers Eissinger and Duke arrived at the scene and interviewed

21  various witnesses to discern what happened.  *Id.*  Plaintiff claims that the officers "were well

22  aware that [plaintiff] had a right to detain the dog owner and that [plaintiff] had not committed

23  any crime."  *Id.* at 7.  According to plaintiff, the officers listened to a female witness' "lies"

24  about the incident (the woman joined in Mr. Handley's alleged lie that plaintiff had punched Mr.

25  Handley) and "decided to use the woman's lies to frame [plaintiff]."  *Id.*  Plaintiff contends that

26  the decision by Officers Duke and Eissinger "constituted a conspiracy."  *Id.*  Plaintiff alleges that

4

the day after the Dog Bite Incident, Eissinger "submitted lies to the court" via a declaration which described the incident at the grocery store, omitted information about Mr. Handley's flight, stated that plaintiff punched Mr. Handley, and stated that plaintiff walked away with the skateboard, resulting in false charges being filed against plaintiff.  *Id.* at 7-9.

According to plaintiff, the officers "decided to use lies to frame" plaintiff and submitted those lies to the court in order "to maintain false charges and cause excessive bail."  *Id.* at 2, 3. Plaintiff contends that all of this violated his right to be free from excessive bail since his bail was increased from $50,000 to $80,000, and his right to due process since Eissinger used the lies "to deceive the court and cause an unjust decision by the court" and plaintiff "was not allowed access to court" and was not "provided an opportunity to dispute the statements."  *Id.* at 2, 9. Plaintiff contends that two false felony charges and one misdemeanor charge were brought against plaintiff even though the officers knew that plaintiff had not committed any crime.  He further asserts that the officers' motive "was to cause financial injury to the plaintiff by using the false charges to cause excessive bail and cause the plaintiff to spend thousands of dollars in attorney fees defending against the charges."  *Id.* at 3, 7, 9.

Plaintiff further contends that while the first case has been pending, plaintiff "was framed a second time."  *Id.* at 3.  Specifically, he claims that on August 28, 2011, a man named Gary Corniel entered plaintiff's garage and threatened plaintiff with two bricks.  He adds that when officers from the City of South Lake Tahoe arrived at the scene they used "the same methods" to frame plaintiff.  *Id.*  Plaintiff calls this the "Brick Incident."  *Id.* at 3, 11-12.  According to plaintiff, when Officer Jake Herminghaus arrived at the scene, he accepted Mr. Corniel's claim of self defense and ignored plaintiff's claim of self defense, as well as the statement from a witness.  *Id.* at 12.  Plaintiff contends that "the police officers of South Lake Tahoe are not properly trained to investigate citizen disputes" and "did not share information with each other when two police officers [Shannon Lacey and Andrew Eissinger] saw evidence that proved [plaintiff] had been telling the truth and that [plaintiff] had acted in self defense."  *Id.*

5

According to plaintiff, both the Dog Bite Incident and the Brick Incident[2] demonstrate that the City of South Lake Tahoe has an unconstitutional policy of extracting excessive bail by having officers lie so that bail is higher; an unconstitutional policy of violating due process by lying about what occurs and not providing the accused an opportunity to oppose those lies; and an unconstitutional policy of discriminating against men by relying upon female witnesses' statements over male witnesses' statements. *Id.* at 15-19, 23-24. Plaintiff contends that each time plaintiff has been framed, the same methods have been used: the officers use lies against plaintiff, ignore exculpatory evidence, and use false felony allegations to create excessive bail. *Id.* at 15. The officers also "act as a team so that they are positioned to support each other should any trouble materialize." *Id.* Plaintiff contends that there is widespread participation in this conduct, since no officer has opposed the conduct even though they know or should know that plaintiff has not committed a crime. *Id.* at 15, 19. Plaintiff also lists six officers who have been involved in framing plaintiff: Eissinger, Duke, Herminghaus, Laney, as well as Josh Adler and Brian Williams. *Id.* at 15. Plaintiff alleges that the City of South Lake Tahoe has been negligent by failing to properly train its officers and has failed to properly discipline its officers. *Id.* at 25-26.

B.   Second Action, 2:12-cv-526

Plaintiff's complaint in the second action alleges a defamation claim against Douglas County and a claim under 42 U.S.C. § 1983 against the City of South Lake Tahoe, Douglas County, El Dorado County, Priscaro, and City of South Lake Tahoe Officers Jake Herminghaus, Shannon Lacey, and Andrew Eissinger, for violation of his Eighth Amendment right to be free from excessive bail and his Fifth and Fourteenth Amendment rights to due process. Compl.,

---

[2] Plaintiff also references a third incident, occurring in 2004 in which plaintiff was arrested in Douglas County, Nevada and was held in custody until 2009 (the "Bargas Incident"). However, plaintiff has not alleged that conduct demonstrated a policy or custom by the City of South Lake Tahoe; he only alleges that there is a pattern in that general geographic region. TAC at 17-18, 19-22.

1    Dckt. No. 1.

2        Although plaintiff contends that the focus of plaintiff's second action is the Brick

3    Incident described above, the complaint in the second action reiterates the allegations in the first

4    action that plaintiff "has been framed" three times by police officers in the South Lake Tahoe

5    region (the Dog Bite Incident in the City of South Lake Tahoe, the Brick Incident in the City of

6    South Lake Tahoe, and the Bargas Incident in Douglas County, Nevada) and that the City of

7    South Lake Tahoe has unconstitutional policies of allowing officers to frame innocent men using

8    lies and allowing those lies to lead to excessive bail. *Id.* at 2-7, 11.  Plaintiff further alleges that

9    his right to equal protection was violated after the Brick Incident when Mr. Corniel was offered a

10   form to fill out in order to make a citizen's arrest but plaintiff was not offered such a form. *Id.* at

11   7.

12       Plaintiff also alleges that El Dorado County prosecutor Priscaro maliciously prosecuted

13   plaintiff and filed charges against him in connection with the Brick Incident, that the $75,000

14   bail imposed after he was arrested in connection with the Brick Incident was excessive, and that

15   when he was taken to El Dorado County jail after the Brick Incident, he was denied water,

16   fainted twice, and suffered an injury to his shoulder as a result. *Id.* at 10-12.

17       Plaintiff also alleges that Douglas County violated his right to due process on August 29,

18   2011 when it provided a police report regarding the Bargas Incident to a California prosecutor,

19   while knowing that the report contained lies that would be used to injure plaintiff, and violated

20   his Eighth Amendment right when the lies contained in that police report caused excessive bail

21   in the California court. *Id.* at 3, 8-9.  Plaintiff contends that Priscaro used that 2004 police report

22   in deciding to maliciously prosecute plaintiff in August 2011. *Id.* at 9, 10-11.  Plaintiff includes

23   general allegations regarding the Bargas Incident, but it is unclear what precisely he is alleging

24   against Douglas County with regard to that incident. *Id.* at 3-5, 12.

25   ////

26   ////

III.    MOTIONS TO DISMISS

    A.    Rule 12(b)(6) Standards

To survive dismissal for failure to state a claim pursuant to Rule 12(b)(6), a complaint must contain more than a "formulaic recitation of the elements of a cause of action"; it must contain factual allegations sufficient to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "The pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." *Id.* (quoting 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1216, pp. 235-236 (3d ed. 2004)). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Aschroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Dismissal is appropriate based either on the lack of cognizable legal theories or the lack of pleading sufficient facts to support cognizable legal theories. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

In considering a motion to dismiss, the court must accept as true the allegations of the complaint in question, *Hospital Bldg. Co. v. Rex Hosp. Trs*., 425 U.S. 738, 740 (1976), construe the pleading in the light most favorable to the party opposing the motion, and resolve all doubts in the pleader's favor. *Jenkins v. McKeithem*, 395 U.S. 411, 421, *reh'g denied*, 396 U.S. 869 (1969). The court will "presume that general allegations embrace those specific facts that are necessary to support the claim.'" *Nat'l Org. for Women, Inc. v. Scheidler*, 510 U.S. 249, 256 (1994) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)).

Pro se pleadings are held to a less stringent standard than those drafted by lawyers. *Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Bretz v. Kelman*, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985). The Ninth Circuit has held that the less stringent standard for pro se parties is now higher in light of *Iqbal* and *Twombly*, but the court still continues to construe pro se filings liberally.

1    *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010).  However, the court's liberal interpretation of

2    a pro se litigant's pleading may not supply essential elements of a claim that are not plead.  *Pena*

3    *v. Gardner*, 976 F.2d 469, 471 (9th Cir. 1992); *Ivey v. Bd. of Regents of Univ. of Alaska*, 673

4    F.2d 266, 268 (9th Cir. 1982).  Furthermore, "[t]he court is not required to accept legal

5    conclusions cast in the form of factual allegations if those conclusions cannot reasonably be

6    drawn from the facts alleged."  *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir.

7    1994).  Neither need the court accept unreasonable inferences, or unwarranted deductions of fact.

8    *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981).

9            In deciding a Rule 12(b)(6) motion to dismiss, the court may consider facts established

10   by exhibits attached to the complaint.  *Durning v. First Boston Corp.*, 815 F.2d 1265, 1267 (9th

11   Cir. 1987).  The court may also consider facts which may be judicially noticed, *Mullis v. U.S.*

12   *Bankr. Ct.*, 828 F.2d at 1338, and matters of public record, including pleadings, orders, and other

13   papers filed with the court.  *Mack v. South Bay Beer Distribs.*, 798 F.2d 1279, 1282 (9th Cir.

14   1986).

15           B.      Plaintiff's Claims in First Action, 2:10-cv-1653

16           The City of South Lake Tahoe, Eissinger, and Duke move to dismiss plaintiff's third

17   amended complaint in the first action, arguing that (1) plaintiff fails to properly plead a *Monell*

18   claim against the City, making only threadbare allegations that simply track the *Monell* claim

19   requirements; (2) plaintiff fails to set forth a short and plain statement of his claims, as required

20   by Rule 8(a); and (3) plaintiff fails to set forth his claims in separate paragraphs using clear

21   headings to delineate the claims alleged and against which defendant each claim is alleged, and

22   further fails to plead clear facts in support of such claims, as required by Rule 10(b).  Dckt. No.

23   63 at 2.  Defendants request that the third amended complaint be dismissed without further leave

24   to amend.  *Id.*

25   ////

26   ////

1          1.  Claims Against El Dorado County and/or State Law Claims

2          As a threshold matter, plaintiff appears to include in his third amended complaint claims

3   that were previously dismissed without leave to amend.  Where plaintiff attempts to include in

4   the third amended complaint claims against El Dorado County or any state law claims against

5   any of the defendants, those claims were already dismissed without leave to amend.  Dckt. Nos.

6   50, 56.  Therefore, any such claims were not properly included in the third amended complaint

7   and should once again be dismissed.

8          2.  *Monell* Claims Against the City

9          The City argues that plaintiff fails to properly plead a *Monell* claim.  The City contends

10  that the third amended complaint asserts threadbare allegations that simply track the *Monell*

11  claim requirements.  Dckt. No. 63-1 at 6-13.  The City argues that plaintiff does not allege

12  sufficient facts showing that: (a) the City has a policy of framing people; (b) the City has a

13  policy of excessive bail; (c) the City has a policy of discriminating against men or treating

14  women preferentially; (d) the City fails to discipline its officers for misconduct; or (e) the City

15  fails to properly train its officers.  *Id.*

16         As previously explained to plaintiff, because there is no respondeat superior liability

17  under 42 U.S.C. § 1983, municipalities may be sued under § 1983 only upon a showing that an

18  official policy or custom caused the constitutional tort.  *Monell v. Dep't of Soc. Servs.*, 436 U.S.

19  658, 691 (1978).  The first requirement of *Monell* is that "plaintiff must identify a 'policy' or

20  'custom' that caused the plaintiff injury."  *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 403

21  (1997) (citing *Monell*, 436 U.S. at 694; *Pembaur v. Cincinnati*, 475 U.S. 469, 480-81 (1986);

22  *City of Canton v. Harris*, 489 U.S. 378, 389 (1989)).  In justifying the imposition of liability for

23  a municipal custom, the Supreme Court has noted that "an act performed pursuant to a 'custom'

24  that has not been formally approved by an appropriate decisionmaker may fairly subject a

25  municipality to liability on the theory that the relevant practice is so wide-spread as to have the

26  force of law."  *Id.* at 404 (citing *Monell*, 436 U.S. at 690-91).  Additionally, a custom or practice

can be "inferred from widespread practices or 'evidence of repeated constitutional violations for which the errant municipal officers were not discharged or reprimanded.'" *Nadell v. Las Vegas Metro. Police Dep't*, 268 F.3d 924, 929 (9th Cir. 2001) (quoting *Gillette v. Delmore*, 979 F.2d 1342, 1349 (9th Cir. 1992)); *see also Menotti v. City of Seattle*, 409 F.3d 1113, 1147 (9th Cir. 2005); *McRorie v. Shimoda*, 795 F.2d 780, 784 (9th Cir. 1986).  "A policy is a deliberate choice to follow a course of action . . . made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Long v. Cnty. of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006).  Alternatively, a single act of a policymaker in some instances can be sufficient for a Monell claim when "the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered." *Pembaur*, 475 U.S. at 481-82.

When dismissing plaintiff's second amended complaint, the court informed plaintiff that with regard to his *Monell* claims against the City, in any third amended complaint plaintiff must (1) identify the challenged policy or custom; (2) explain how the policy or custom is deficient; (3) explain how the policy or custom caused the plaintiff harm; and (4) reflect how the policy or custom amounted to deliberate indifference, i.e. show how the deficiency involved was obvious and the constitutional injury was likely to occur.  Dckt. No. 50 at 16 (citing *Young,* 687 F. Supp. 2d at 1149).  The court also reminded plaintiff that he must articulate more than threadbare allegations that simply track the *Monell* claim requirements.  *Id.* (citing *Iqbal*, 129 S. Ct. at 1949).  The plaintiff continues to struggle to do so.

As with plaintiff's second amended complaint, his third amended complaint does not allege a formal policy or official custom.  Nor does the complaint allege that a policymaker acted against the plaintiff.  Rather, plaintiff appears to be alleging that the conduct he complains of regarding his law enforcement contacts during the two incidents necessarily amounts to a custom/policy because there was widespread participation in the conduct, and police training was inadequate.

As for the "widespread participation," the facts alleged are that six different South Lake Tahoe police officers were involved in framing plaintiff and no officer opposed the conduct, even though they knew or should have known that plaintiff had not committed a crime. The third amended complaint does not identify what conduct of each of the six officers supposedly demonstrates that their actions over the two separate contacts with plaintiff constitutes a policy to frame defendants, or otherwise arises to "widespread practices or 'evidence of repeated constitutional violations. . . .'" *Nadell v. Las Vegas Metro. Police Dep't*, 268 F.3d at 929. Post-*Iqbal*, plaintiff cannot rely on conclusory factual allegations. Rather, he must allege facts which, if true, show that the County actually had a constitutionally impermissible policy, practice, or custom. *Waggy v. Spokane County Washington*, 594 F.3d 707, 713 (2010). Asserting the ultimate conclusion that it did is no longer adequate.

Reduced to its core allegations, the complaint describes two different law enforcement contacts in which plaintiff was involved and complains that the officers in each instance interviewed and believed other witnesses but not plaintiff.[3] The first contact was when officers responded to the Dog Bite Incident in which plaintiff chased down the fleeing dog owner and pushed him off the skate board. Plaintiff alleges that Officers Duke and Eissinger arrived and listened to a female witness' version of what happened (which plaintiff dismisses as lies), and chose to rely on her statements rather than plaintiff's description of the incident. Plaintiff labels this in a conclusory fashion as "decid[ing] to use the woman's lies to frame [plaintiff]." Dckt No. 57 at 7. Plaintiff claims he was aggrieved by the submission of these "lies" to the court which resulted in false charges. The second contact occurred when officers responded to an altercation that plaintiff refers to as the Brick Incident. Plaintiff claims that during this incident

---

[3] As noted above, although plaintiff also alleges that the Bargas Incident provides a third example of the policy of framing individuals in the Lake Tahoe region generally, that incident occurred in Douglas County, Nevada, not in the City of South Lake Tahoe. There are no allegations in the third amended complaint indicating that any City officers were at all connected to the Bargas Incident.

he was threatened by Corniel with two bricks.  Plaintiff claims that when Officer Herminghaus

arrived, the officer listened to and accepted Corniel's version of what happened and did not

believe plaintiff's version.  Dckt No. 57 at 11-12.  Plaintiff, in conclusory fashion, characterizes

this as again using lies to frame him.  *Id.*  Plaintiff relies on each of these events as showing an

unconstitutional policy of using lies to frame him, to extract excessive bail and to discriminate

against men by relying on female witnesses over the statement of male witnesses.[4]  Dckt No. 57

at 15-19, 23-24.  Setting aside plaintiff's conclusory characterizations, the specific facts that he

describes hardly demonstrate a widespread practice of the City's police department of using lies

to frame accused defendants.  Rather, he articulates facts showing two encounters with law

enforcement, both of which occurred when officers responded to altercations in which plaintiff

was involved.  By plaintiff's own description, the officers listened to the witnesses and relied on

the statements of the other witnesses rather than accepting plaintiff's account of what happened.

An officer relying on and reporting the statements of witnesses to the event does not demonstrate

a policy, custom or widespread practice of framing defendants or using lies to extract excessive

bail.  Plaintiff's conclusory characterizations of the events in that manner simply do not meet the

pleading requirement of *Iqbal*.

　　　　The third amended complaint, like the second amended complaint, once again vaguely

alleges several overlapping municipal "customs."  First, plaintiff alleges that the City has a

policy of violating due process by framing people through the use of lies by police officers and

failure to consider exculpatory evidence.  But, as discussed above, apart from the those ultimate

conclusions, which under *Iqbal* cannot form the basis for the claim, the complaint is devoid of

specific acts which, if taken as true, demonstrate such a policy or established pattern or practice.

Second, he alleges that the City has a policy of violating due process by not providing the

accused an opportunity to respond to the lies told by police officers.  Third, he alleges that the

---

[4]  Curiously, the witness officers relied on in the brick incident, Gary Corniel, is male.

City has an unconstitutional policy of extracting excessive bail in violation of the Eighth

Amendment based on those lies.  Fourth, he alleges that the City has a policy of discriminating

against men by relying upon female witnesses' statements over male witnesses' statements.

Fifth, he contends that the City fails to properly train its officers.  Sixth, plaintiff contends the

City fails to properly discipline its officers.  Again, plaintiff has alleged ultimate conclusions but

not specific acts that show such policies actually existed.  Those conclusory allegations cannot

satisfy *Iqbal*.  129 S.Ct. 1937, 1951 ("It is the conclusory nature of respondent's allegations,

rather than their extravagantly fanciful nature, that disentitles them to the presumption of truth.")

As for the claim of inadequacy of police training, such a failure may serve as the basis for

§ 1983 liability against a municipality where the failure to train amounts to deliberate

indifference to the rights of persons with whom the police come into contact.  *City of Canton*,

489 U.S. at 388.  "Deliberate indifference" is established where "'the need for more or different

training is so obvious, and the inadequacy so likely to result in the violation of constitutional

rights, that the policymakers of the city can reasonably be said to have been deliberately

indifferent to the need." *Clouthier v. County of Contra Costa*, 591 F.3d 1232, 1249 (9th Cir.

2010) (quoting *City of Canton*, 489 U.S. at 390).  However, to survive a motion to dismiss, a

plaintiff alleging *Monell* liability based on lack of training must allege that:  (1) he was deprived

of a constitutional right; (2) the local government entity had a training policy that amounts to

deliberate indifference to constitutional rights of persons with whom its peace officers are likely

to come into contact; and (3) his constitutional injury would have been avoided had the local

government unit properly trained those officers.  *See Lanier v. City of Fresno*, 2010 WL

5113799 at *11-12 (E.D. Cal. Dec. 9, 2010).  Other that stating the ultimate conclusions that the

officers were inadequately trained and the failure to provide training violated plaintiff's

constitutional rights, plaintiff has not identified what acts directed at him satisfy each of the

elements above and show that these ultimate conclusions are warranted. Accordingly, the City's

motion to dismiss plaintiff's *Monell* claim(s) should be granted with leave to amend.

### 3. Claims Against Eissinger and Duke

Defendants also argue that plaintiff's third amended complaint fails to comply with Rules 8(a) and 10(b), and thus fails to state a claim against Eissinger or Duke.  Dckt. No. 63-1 at 13-15.  Specifically, defendants contend that the third amended complaint does not contain a short and plain statement of the claims against Eissinger and Duke and does not give those defendants fair notice of the claims against them, as required by Rule 8(a), nor does it set forth the different claims in separate paragraphs under clear headings that delineate each claim or designate which defendant each claim is asserted against, with clear facts in support of each such claim, as required by Rule 10(b).  *Id.*  The arguments are well taken.

The third amended complaint alleges a variety of conduct against defendants Eissinger and Duke.  Once again, however, plaintiff fails to comply with Rules 8(a) and 10(b).  *See* Fed. R. Civ. P. 8(a) (requiring the complaint to set forth a short and plain statement of the claim(s), showing entitlement to relief and giving the defendant(s) fair notice of the claim(s) against them); Fed. R. Civ. P. 10(b) (providing that if plaintiff has more than one claim based upon separate transactions or occurrences, the claims must be set forth in separate counts).  As defendants note, the third amended complaint "recites factual allegations regarding three separate incidents and then makes broad, vague, disjointed, and unelaborated statements following his factual allegations."  Dckt. No. 63-1 at 15.  Nowhere does the complaint, as most recently amended, list the specific cause(s) of action being asserted against Eissinger and/or Duke, let alone provide separate headings for each such claim together with the factual allegations that are necessary to establish the particular cause of action being asserted.  Given the large number of allegations in the third amended complaint, this failure to specifically identify the claims against Eissinger and Duke and the additional failure to specify which factual allegations relate to which claims and which defendant(s), not only presents a factual morass that is difficult to sort through, but it results in a lack of fair notice to defendants of the claim(s) against them.  Accordingly, plaintiff's federal claims against defendants Eissinger and Duke

1  must be dismissed for failure to comply with Rules 8(a) and 10(b).  *See* Fed. R. Civ. P. 12(b)(6)

2  and 41(b)

3          4.  Leave to Amend

4          Ninth Circuit precedent cautions that pro se plaintiffs must be afforded an opportunity to

5  cure pleading deficiencies by amendment.  Plaintiff is admonished, however, that his entitlement

6  to further leave to amend is not limitless.  He has now filed three amended complaints and has

7  still failed to state a cognizable claim.  The court will give plaintiff one further chance to amend

8  his complaint to state federal claims against Eissinger and Duke and/or a *Monell* claim against

9  the City.  If plaintiff elects to do so, plaintiff *must* comply with the requirements of Rules 8(a)

10  and 10(b); the complaint must use clear headings to delineate each claim alleged and against

11  which defendant or defendants the claim is alleged; and must plead clear facts that support each

12  claim under each header.  Except as addressed below, the complaint shall not add new claims or

13  new defendants.  Plaintiff is also reminded that if he elects to file a fourth amended complaint,

14  the court cannot refer to a prior pleading in order to make his fourth amended complaint

15  complete.  Local Rule 220 requires that an amended complaint be complete in itself without

16  reference to any prior pleading.  This is because, as a general rule, an amended complaint

17  supersedes the original complaint.  *See Loux v. Rhay*, 375 F.2d 55, 57 (9th Cir. 1967).  If plaintiff

18  does not file a fourth amended complaint within the time prescribed below, this action may be

19  dismissed for failure to prosecute.

20      C.      Plaintiff's Claims in Second Action, 2:12-cv-526

21              1.  Claims Against Douglas County

22          Defendant Douglas County, Nevada moves to dismiss plaintiff's complaint in the second

23  action for lack of personal jurisdiction pursuant to Rule 12(b)(2), arguing that the allegations

24  against it are insufficient to establish minimum contacts with the State of California sufficient to

25  vest this court with personal jurisdiction over Douglas County, Nevada.  Dckt. No. 8-1 at 2-3.

26  ////

When a defendant challenges the sufficiency of personal jurisdiction under Rule 12(b)(2), the plaintiff bears the burden of establishing that the exercise of jurisdiction is proper. *Sinatra v. Nat'l Enquirer, Inc.*, 854 F.2d 1191, 1194 (9th Cir. 1988).  When, as here, the court acts on the motion without conducting an evidentiary hearing, plaintiff's burden is light:  "the plaintiff need only make 'a prima facie showing of jurisdictional facts to withstand the motion to dismiss.'" *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1073 (9th Cir. 2011).  The uncontroverted allegations in the complaint are taken as true, and factual disputes are resolved in the plaintiff's favor. *Id.*

Plaintiff has not identified any statute that provides either for nationwide service of process or for any other basis of personal jurisdiction over Douglas County in this case. Accordingly, the court must rely upon Rule 4(k)(1) (personal jurisdiction over defendant "who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located"), and applies California law. *See id.* (where "no federal statute authorizes personal jurisdiction, the district court applies the law of the state in which the court sits").  California's long-arm statute, California Civil Procedure Code section 410.10, therefore governs this inquiry, and it authorizes the court to exercise personal jurisdiction to the extent permitted by federal due process. *Id.* at 1074.

For a court to exercise personal jurisdiction over a nonresident defendant consistent with due process, that defendant must have "certain minimum contacts . . . such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Calder v. Jones*, 465 U.S. 783, 788 (1984); *CollegeSource*, 653 F.3d at 1074.  If the nonresident defendant's contacts with the state are not sufficiently continuous or systematic to give rise to "general personal jurisdiction," the defendant may still be subject to "specific personal jurisdiction" on claims arising out of defendant's contacts with the forum state. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477-78 (1985); *Haisten v. Grass Valley Med. Reimbursement Fund, Ltd.*, 784 F.2d 1392, 1397 (9th Cir. 1986).  Specifically, a "nonresident defendant's

17

discrete, isolated contacts with the forum" will support "specific jurisdiction" over that defendant "on a cause of action arising directly out of its forum contacts." *CollegeSource*, 653 F.3d at 1076.  Whether specific jurisdiction exists is determined by a three-pronged test:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e., it must be reasonable.

*Id.*  Plaintiff bears the burden of satisfying the first two prongs.  *Id.*  If plaintiff does so, the burden then shifts to defendant "to set forth a 'compelling case' that the exercise of jurisdiction would not be reasonable."  *Id.* (quoting *Burger King*, 471 U.S. at 476-78).

Plaintiff has not shown that within the context of the claims he purports to assert here Douglas County's contacts with the state of California are sufficiently continuous or systematic to give rise to general personal jurisdiction.  Nor has he shown that the County's specific forum-related activities directed at plaintiff give rise to specific jurisdiction over Douglas County on plaintiff's claims.  He alleges that Douglas County defamed him.  He claims that the County violated his right to due process and his right to be free from excessive bail when it provided a police report regarding the Bargas Incident to a California prosecutor, knowing that the report contained lies that would be used to injure plaintiff.  Compl. at 3, 8-9.  Plaintiff also includes general allegations regarding the 2004 Bargas Incident, but it is unclear what precisely he is alleging against Douglas County with regard to that incident.  *Id.* at 3-5, 12.  Distilled to their essence, plaintiff's specific allegations are that Douglas County complied with a request by a California prosecutor for a copy of a police report.  Plaintiff has not shown that the incident or his arrest, conviction, or incarceration was connected to California in any way.[5]  Nor do his

---

[5] In his opposition, plaintiff focuses primarily on his argument that the 2004 Bargas Incident in Douglas County, Nevada violated his rights.  Dckt. No. 9.  However, he does not connect that incident to the State of California or any residents thereof (other than the letter that

allegations show that the provision of a police report regarding the Bargas Incident to the

California prosecutor, amount to the purposeful availment of the privilege of conducting

activities in California, thereby invoking the benefits and protections of its laws, or the

purposeful direction of County activities or the consummation of a transaction with the state of

California or a resident thereof, that could support personal jurisdiction.  *See Sher v. Johnson,*

911 F.2d 1357, 1362 (9th Cir. 1990) (finding that contacts such as accepting payment from a

California bank and making phone calls and sending letters to California do not, by themselves,

establish purposeful availment if they are not the deliberate creation of a "substantial

connection" with California and are not done for the purpose of promoting business within

California); *see also Bright Development v. Touton*, 2010 WL 2842919, at *4-5 (E.D. Cal. July

19, 2010).  And, even if plaintiff could establish the first two prongs of the specific jurisdiction

test, Douglas County has demonstrated that the exercise of jurisdiction here, where the only

conduct Douglas County had with California was mailing a police report to a California

prosecutor upon that prosecutor's request, would not be reasonable and would not comport with

the traditional notions of fair play and substantial justice.

     In short, plaintiff has failed to establish the court's personal jurisdiction over Douglas

County, Nevada, and his claims against that defendant must be dismissed without leave to

amend.

          2.  Claims Against El Dorado County and Priscaro

     Defendants El Dorado County and El Dorado County prosecutor Robert Priscaro move to

dismiss, arguing that (1) plaintiff fails to properly state a *Monell* claim against El Dorado County

despite specific instruction by the court in the first Harvey action; (2) plaintiff has not and cannot

demonstrate excessive bail as a matter of law; (3) Priscaro is absolutely immune from liability

under California and federal law; (4) El Dorado County cannot be held vicariously liable for any

was sent to the California prosecutor, which is discussed separately), nor does he respond to
Douglas County's arguments regarding lack of personal jurisdiction.

1   alleged conduct by Priscaro; and (5) plaintiff is impermissibly attempting to maintain duplicative

2   actions against El Dorado County.  Dckt. No. 19 at 2.

3        Plaintiff's complaint in the second action alleges a claim under 42 U.S.C. § 1983 against

4   Priscaro and El Dorado County, contending that Priscaro brought false charges against him

5   based on the Brick Incident, that excessive bail was imposed, and that when he was taken to the

6   El Dorado County jail after the Brick Incident, he was denied water, fainted twice, and suffered

7   an injury to his shoulder as a result.  Compl., Dckt. No. 1, at 2, 10-11, 12.

8                          a.  False Charges/Malicious Prosecution

9        Plaintiff's § 1983 claim against defendant Priscaro alleges that Priscaro violated

10  plaintiff's rights by filing charges against him and maliciously prosecuting him in connection

11  with the Brick Incident.  The claim is barred by absolute immunity.

12       "Prosecutors are absolutely immune from liability under § 1983 for their conduct insofar

13  as it is 'intimately associated' with the judicial phase of the criminal process."  *Botello v.*

14  *Gammick*, 413 F.3d 971, 975 (9th Cir. 2005) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 430

15  (1976)).  Prosecutors are fully protected by absolute immunity when performing traditional

16  activities related to the initiation and presentation of criminal prosecutions.  *Imbler*, 424 U.S. at

17  430-31; *Botello*, 413 F.3d at 976 (it is "well established that a prosecutor has absolute immunity

18  for the decision to prosecute a particular case.").  Thus, even allegations of malicious

19  prosecution, *Imbler*, 424 U.S. at 424-427, coercion of perjured testimony, *Blevins v. Ford*, 572

20  F.2d 1336, 1339 (9th Cir.1978), falsification of evidence and concealment of exculpatory

21  evidence, *Lee v. Willins*, 617 F.2d 320, 322 (2d Cir.), cert. denied 449 U.S. 861 (1980),

22  concealing exculpatory evidence, *Brawer v. Horowitz*, 535 F.2d 830, 834 (3d Cir.1976), and

23  even conspiracy between judge and prosecutor to predetermine the outcome, *Ashelman v. Pope*,

24  793 F.2d at 1072, at 1079 (1986) (*en banc*), must be dismissed on grounds of prosecutorial

25  immunity where the alleged acts occurred while performing prosecutorial activities of initiating

26  and presenting criminal cases.  In this case, the complaint itself demonstrates that all allegations

                                            20

against Priscaro involve conduct that was solely associated with the judicial phase of the criminal process.  Therefore, plaintiff's § 1983 claims against Priscaro, and any § 1983 claims against the County premised on the allegations in the complaint of Priscaro's prosecutorial conduct, must be dismissed.

Moreover, the purported state law claims against Priscaro or El Dorado County for malicious prosecution are also barred.  California Government Code section 821.6 states that "[a] public employee is not liable for injury caused by his instituting or prosecuting any judicial or administrative proceeding within the scope of his employment, even if he acts maliciously and without probable cause."  California Government Code section 815.2(b) further provides that "a public entity is not liable for an injury resulting from an act or omission of an employee of the public entity where the employee is immune from liability."  As Priscaro was clearly acting within the scope of his employment in prosecuting the Brick Incident, both he and the County are immune from liability on any state law malicious prosecution claim.

Therefore, plaintiff's state law claims against defendant Priscaro and any such claims against El Dorado County based on Priscaro's alleged conduct must be dismissed without leave to amend.

b. <u>Excessive Bail in Connection with the Brick Incident</u>

Plaintiff's complaint is unclear as to whether he purports to state a claim against El Dorado County based on the allegation that plaintiff was charged excessive bail after he was arrested for the Brick Incident.[6]  He suggests in his opposition that his excessive bail claims were only brought against El Dorado County in connection with the Dog Bite Incident.  Dckt. No. 25 at 5.  Whatever his intent, a claim for excessive bail in connection with the Brick Incident would

---

[6] Plaintiff does not appear to allege a claim of excessive bail in connection with the Dog Bite Incident.  However, such a claim would be duplicative of the claims plaintiff brought in his first action against El Dorado County, which were dismissed without leave to amend.  Plaintiff may not now attempt to reassert those claims in his second action.  *See Adams v. State of Cal. Dep't of Health Servs.*, 487 F.3d 684, 688 (9th Cir. 2007).

have to be dismissed because plaintiff has not alleged facts demonstrating any County policy or custom to seek (or cause to be set) excessive bail.  Therefore, no basis for *Monell* liability on that claim has been alleged.[7]

Moreover, even assuming a custom or policy, plaintiff fails to state a claim of excessive bail.  To prevail on a § 1983 claim that bail set for plaintiff violated the Excessive Bail Clause of the Eight Amendment, plaintiff must demonstrate that his bail was enhanced for purposes unauthorized by California law or that the amount of bail was excessive in light of the valid purposes for which it was set.  *Galen v. County of Los Angeles*, 477 F.3d 652, 661 (9th Cir. 2007); *see also Williams v. City of Sacramento Police Dep't*, 2012 WL 762016, at *5 (E.D. Cal. Mar. 6, 2012).  California Penal Code section 1269b(c) provides that "[i]t is the duty of the superior court judges in each county to prepare, adopt, and annually revise a uniform countywide schedule of bail for all bailable felony offenses . . . ."  Cal. Pen. Code § 1269b(c).  Certain jail custodians are authorized to immediately release those who are arrested and booked, prior to an initial court appearance, upon the posting of bail in the amount specified in the countywide schedule of bail.  *Id*. § 1269b(b).  However, "California vests judicial officers with the exclusive authority to enhance or reduce bail."  *Galen*, 477 F.3d at 663 (citing Cal. Pen. Code § 1269c).  "Pursuant to traditional tort law principles of causation, which we apply to § 1983 claims, . . . a judicial officer's exercise of independent judgment in the course of his official duties is a superseding cause that breaks the chain of causation linking law enforcement personnel to the officer's decision . . . ."  *Id.* (internal citations omitted).

Here, plaintiff has not alleged that any County employee "prevented the [judicial officer] from exercising his independent judgment."  *Id*.  To the contrary, the documents attached to

---

[7] Plaintiff's most recent allegations fail even though he was provided specific instructions in his first action regarding how to state a *Monell* claim.  The failure to follow that guidance, and the failure to include any allegations in his complaint regarding a policy or custom by the County regarding excessive bail, suggest that plaintiff simply is unable to allege the required facts and that further leave to amend would be futile.  *See Ferdik v. Bonzelet*, 963 F.2d 1258, 1260-61 (9th Cir. 1992).

plaintiff's complaint reveal that the El Dorado County Probation Department Bail Investigation

Report recommended that bail be set at $105,000, Compl. at 21, which is consistent with the El

Dorado County bail schedule.  Def. El Dorado County's Req. for Jud. Not., Dckt. No. 19-3, Ex.

3.[8]  Those documents are properly considered on this motion.  When a complaint is accompanied

by attached documents, the court is not limited by the allegations contained in the body of the

complaint.  Rather, the attachments become part of the complaint for purposes of a Rule 12(b)(6)

motion and may be considered in ruling on the motion.  *See Durning v. First Boston Corp.*, 815

F.2d 1265, 1267 (9th Cir. 1987).  Plaintiff's complaint together with its attachments demonstrate

that he cannot show that the $75,000 bail amount that was set after the Brick Incident is

excessive.  Therefore, any claims against El Dorado County based on an excessive bail amount

must be dismissed without leave to amend.[9]

c. Shoulder Injury/Denial of Water While in El Dorado County Jail

Plaintiff also attempts to assert a claim against El Dorado County based on the County's

alleged failure to provide him water while in the jail after the Brick Incident.  He claims that this

caused him to faint twice and suffer an injury to his shoulder.  However, he again fails to provide

any factual basis for *Monell* liability on that claim.  He has not alleged any County policy or

custom relating to withholding water from jail inmates.  He also was provided specific

instructions in the first action regarding how to state a *Monell* claim against El Dorado County

generally.  His failure to address the *Monell* requirements with allegations demonstrating an

---

[8] The court grants El Dorado County's request for judicial notice of the 2011 Uniform Bail Schedule for the Superior Court of California County of El Dorado pursuant to Federal Rule of Evidence 201(b).

[9] Moreover, to the extent plaintiff was seeking to hold the El Dorado County Superior Court liable for an allegedly excessive bail schedule, that claim would be barred by the Eleventh Amendment and it must be dismissed without leave to amend.  *See Simmons v. Sacramento County Super. Ct.*, 318 F.3d 1156, 1161 (9th Cir. 2003) (plaintiff cannot state a claim against Sacramento County Superior Court because it is an arm of the state and thus barred by the Eleventh Amendment); *Franceschi v. Schwartz*, 57 F.3d 828, 831 (9th Cir. 1995) (claim against South Orange County Municipal Court barred by Eleventh Amendment because it is "arm of the state").

established custom or policy in his new complaint as to this claim suggests that he simply cannot

do so. However, given that he was not previously allowed an opportunity to amend his *Monell*

claim based on lack of water while in the County jail following the Brick Incident he will be

allowed an opportunity to do so now. Therefore, to the extent plaintiff can actually state a

proper *Monell* claim against El Dorado County based on a denial of water or other injury he

sustained as a result of that denial while housed at the El Dorado County jail after the Brick

Incident, he may include such allegations in any fourth amended complaint he files in the first

action.[10]

### 3. Claims Against the City, Eissinger, Herminghaus, and Laney

Finally, the City of South Lake Tahoe and Officers Eissinger, Hermingaus, and Laney

move to dismiss plaintiff's complaint in the second action. They argue that (1) plaintiff fails to

state a claim upon which relief may be granted, and (2) the second action should be dismissed as

impermissibly duplicative of plaintiff's first action.[11] Dckt. No. 5.

Indeed, plaintiff's claims against the City defendants in his second action are very similar

to those asserted in his first action. Although plaintiff contends that the focus of his second

action is the Brick Incident, while the focus of the first action is the Dog Bite Incident, the

complaint in the second action reiterates many of the allegations that plaintiff has made in the

first action – that plaintiff "has been framed" three times by police officers in the South Lake

Tahoe region (the Dog Bite Incident in the City of South Lake Tahoe, the Brick Incident in the

City of South Lake Tahoe, and the Bargas Incident in Douglas County, Nevada) and that the City

of South Lake Tahoe has unconstitutional policies of allowing officers to frame innocent men

using lies and allowing those lies to lead to excessive bail. Compl. at 2-7, 11. The only new

---

[10] Other than its general arguments that plaintiff has failed to allege a *Monell* claim and that the second action is duplicative of plaintiff's first action, El Dorado County has not provided a basis for its argument that this claim should be dismissed without leave to amend.

[11] In the alternative, the City defendants request that the court stay plaintiff's second action pending resolution of plaintiff's first action.

allegation in his second complaint against the City defendants appears to be his claim that his

right to equal protection was violated after the Brick Incident when Mr. Corniel was offered a

form to fill out in order to make a citizen's arrest but plaintiff was not offered such a form.  *Id.* at

7.

Plaintiff has "no right to maintain two separate actions involving the same subject matter

at the same time in the same court and against the same defendant."  *Adams v. Cal. Dep't of*

*Health Services*, 487 F.3d 684, 688 (9th Cir. 2007).  To determine whether a second action is

duplicative of an earlier-filed action, the court must "examine whether the causes of action and

relief sought, as well as the parties or privies to the action, are the same."  *Id.* at 688-89 (citing

*United States v. The Haytian Republic*, 154 U.S. 118, 124 (1894) ("There must be the same

parties, or, at least, such as represent the same interests; there must be the same rights asserted

and the same relief prayed for; the relief must be founded upon the same facts, and the . . .

essential basis, of the relief sought must be the same."); *Curtis v. Citibank, N.A.*, 226 F.3d 133,

140 (2d Cir. 2000) (holding that the trial court did not abuse its discretion in dismissing "*Curtis*

*II* claims arising out of the same events as those alleged in *Curtis I*," which claims "would have

been heard if plaintiffs had timely raised them"); *Serlin v. Arthur Andersen & Co.*, 3 F.3d 221,

223 (7th Cir. 1993) ("[A] suit is duplicative if the claims, parties, and available relief do not

significantly differ between the two actions.")).

Here, plaintiff's claims against the City defendants in the second action are duplicative of

the claims against the City defendants in the first action.  First, the causes of action are the same

since the rights or interests established in the first action would be destroyed or impaired by

prosecution of the second action; substantially the same evidence will be presented in the two

actions; the two suits involve alleged infringement of the same rights; and the two suits arise out

of the same transactional nucleus of facts.  *Western Sys., Inc. v. Ulloa*, 958 F.2d 864, 871 (9th

Cir. 1992) ("Whether two events are part of the same transaction or series depends on whether

they are related to the same set of facts and whether they could conveniently be tried together.");

1    *Costantini v. Trans World Airlines*, 681 F.2d 1199, 1201-02 (9th Cir. 1982) (providing that in

2    applying the transaction test, the court examines four criteria: (1) whether rights or interests

3    established in the prior judgment would be destroyed or impaired by prosecution of the second

4    action; (2) whether substantially the same evidence is presented in the two actions; (3) whether

5    the two suits involve infringement of the same right; and (4) whether the two suits arise out of

6    the same transactional nucleus of facts).  Second, two of the City defendants in the first action

7    and the second action are the same (the City of South Lake Tahoe and Officer Eissinger) and the

8    other two South Lake Tahoe police officers named in the section action (Herminghaus and

9    Laney) are in privity with those named in the first action.  *See Kourtis v. Cameron*, 419 F.3d

10   989, 996 (9th Cir. 2005).

11          Therefore, the claims in the second action will be dismissed.  However, since plaintiff

12   was given leave to amend his complaint in the first action with regard to his claims against the

13   individual police officers named therein (Eissinger and Duke), plaintiff will also be permitted

14   leave to add to any fourth amended complaint his § 1983 claims against the other individual city

15   police officers (Herminghaus and Laney).[12]

16   IV.    CONCLUSION AS TO FIRST ACTION, 2:10-cv-1653

17          Accordingly, with regard to plaintiff's first action, 2:10-cv-1653-KJM-EFB, IT IS

18   HEREBY ORDERED that plaintiff's request for a hearing, Dckt. No. 72, is denied.

19          IT IS FURTHER RECOMMENDED that:

20          1.  Defendants' motion to dismiss, Dckt. No. 63, be granted, with leave to amend as

21   provided herein.  Specifically, plaintiff should be permitted to amend his § 1983 *Monell* claim

22   against the City and his § 1983 claim against defendants Eissinger and Duke.  He should also be

23   permitted to include in any fourth amended complaint his § 1983 claims against defendants

24   _____

25          [12] Since plaintiff's complaint in the section action does not allege any state law claims
     against the City defendants and the state law claims in the first action were dismissed without
26   leave to amend, the only claims plaintiff may assert against any of the City defendants in his
     fourth amended complaint will be his § 1983 claims.

Herminghaus and Laney and/or a § 1983 *Monell* claim El Dorado County based *only* on the County's alleged failure to provide him water and the alleged resulting shoulder injury while in the jail after the Brick Incident.

2.  Plaintiff be provided forty-five days from the date any order adopting these findings and recommendations is filed to file a fourth amended complaint as provided herein.  If plaintiff does not file a fourth amended complaint within the time prescribed, this action may be dismissed for failure to prosecute.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

V.      CONCLUSION AS TO SECOND ACTION, 2:12-cv-526

With regard to the second action, 2:12-cv-526-KJM-EFB, IT IS HEREBY ORDERED that the status (pretrial scheduling) conference currently set for May 15, 2013 is vacated.[12]

IT IS FURTHER RECOMMENDED that:

1.  Each of the three motions to dismiss, Dckt. Nos. 4, 8, and 19, be granted without leave to amend;[13] and

////

////

------

[12] Accordingly, the parties need not file status reports as provided in the January 22, 2013 minute order.  If the recommendation of dismissal herein is not adopted by the assigned district judge, the scheduling conference will be re-set.

[13] As noted above, some of the claims in plaintiff's second action may be asserted in any fourth amended complaint filed in the first action.

2.  The Clerk be directed to close the second case, 2:12-cv-526-KJM-EFB.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

DATED:  February 21, 2013.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE