1

2

3

4

5

6

7

8                       IN THE UNITED STATES DISTRICT COURT

9                      FOR THE EASTERN DISTRICT OF CALIFORNIA

10   DANIEL THOMAS HARVEY,

11              Plaintiff,                    No. 2:10-cv-1653-KJM-EFB PS

12        vs.

13   CITY OF SOUTH LAKE TAHOE;
     EL DORADO COUNTY; ANDREW          ORDER AND
14   EISSINGER; CHARLES DUKE;          FINDINGS AND RECOMMENDATIONS
     SHANNON LANEY; JAKE
15   HERMINGHAUS,

16                     Defendants.

17   _____/

18        This action, in which plaintiff is proceeding pro se, is before the undersigned pursuant to

19   Eastern District of California Local Rule 302(c)(21).  *See* 28 U.S.C. § 636(b)(1).  Presently

20   pending for decision are two motions to dismiss plaintiff's fourth amended complaint, ECF Nos.

21   80 and 81,[1] as well as plaintiff's request for "removal" of the undersigned from this case, ECF

22   No. 87.  Specifically, defendant El Dorado County (the "County") moves to dismiss because

23   plaintiff's fourth amended complaint does not include allegations that are sufficient to state a

24   /////

25   _____

26        [1] The court determined that oral argument would not be of material assistance and
     therefore vacated the hearing on the motions to dismiss.  *See* E.D. Cal. L.R. 230(g).

claim against the County under *Monell*, ECF No. 80,[2] and defendants the City of South Lake Tahoe (the "City"), South Lake Tahoe Police Officer Andrew Eissinger, South Lake Tahoe Police Officer Charles Duke, South Lake Tahoe Police Officer Shannon Laney, and South Lake Tahoe Police Officer Jake Herminghaus (collectively, the "individual defendants") move to dismiss because plaintiff's fourth amended complaint does not include allegations that are sufficient to state a claim against the City under *Monell* and it does not comply with Federal Rules of Civil Procedure 8(a) or 10(b), or this court's previous orders, ECF No. 81.  Plaintiff opposes both motions to dismiss, and requests that the undersigned be "removed" as the magistrate judge assigned to this action.  ECF Nos. 82, 83, 87.  For the reasons stated herein, plaintiff's motion for recusal, styled as a "motion for removal" is denied.  Further, the County's motion to dismiss must be granted without leave to amend, the City's motion to dismiss be must granted without leave to amend, and the individual defendants' motion to dismiss must be granted with leave to amend.

I.    REQUEST FOR "REMOVAL" OF THE UNDERSIGNED

As a threshold matter, plaintiff has raised the question of whether the undersigned must recuse from this case.

On July 26, 2013, plaintiff filed a request that the undersigned be "removed" as the magistrate judge assigned to this case.  ECF No. 87.  Plaintiff contends that the undersigned actions "demonstrate bias in favor of [the defendant] police officers; and indifference towards the rights and welfare of the plaintiff."  *Id.* at 3.

The court construes the request as a motion for recusal.  However, plaintiff has not shown that recusal is appropriate.  The applicable recusal statute, 28 U.S.C. § 455, provides that "[a]ny justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455(a).  He shall also

---

[2] For ease of reference, all citations to pages numbers reference the pages numbers assigned by the court's case management and electronic case file (CM/ECF) system.

2

disqualify himself when he has "a personal bias or prejudice concerning a party . . . ." *Id.* § 455(b)(1). Although a judge must recuse himself in those circumstances, he must not simply recuse out of an abundance of caution when the facts do not warrant recusal. Rather, there is an equally compelling obligation not to recuse where recusal in not appropriate. *See United States v. Holland*, 519 F.3d 909, 912 (9th Cir. 2008) ("We are as bound to recuse ourselves when the law and facts require as we are to hear cases when there is no reasonable factual basis for recusal.").

Here, plaintiff has not shown any basis upon which the undersigned should recuse. He has not shown that the undersigned's impartiality could reasonably be questioned or that the undersigned has any personal bias or prejudice toward plaintiff. To the contrary, it appears that plaintiff seeks the undersigned's recusal because plaintiff is dissatisfied with the court's decisions to submit defendants' motions to dismiss without oral argument, and is dissatisfied with what plaintiff contends has been an undue delay of his case. However, the Local Rules expressly provide that a hearing may be vacated when oral argument would not be of material assistance. *See* E.D. Cal. L.R. 230(g). Each time the court has vacated a hearing, it has found that oral argument would not be of assistance to the court.[3] Plaintiff has provided no basis for recusal. Accordingly, the motion is denied.

II.    PROCEDURAL HISTORY

Plaintiff initially filed this action in June 2010 against the City of South Lake Tahoe, Officers Eissinger and Duke, and the County of El Dorado, alleging a claim under 42 U.S.C. § 1983 and various state law claims. ECF No. 1. After the County moved to dismiss the

---

[3] Moreover, plaintiff asserts that the case has been delayed and that the delay itself somehow manifests bias. The contention lacks merit. Although plaintiff's complaint was initially filed in 2010, in the interim plaintiff has filed three other complaints herein (each drawing motions to dismiss for failure to state a claim), an appeal which had been dismissed, and a separate action. While plaintiff, who is proceeding pro se, may have understandably struggled to state a claim the court has not unduly delayed his action. Further, plaintiff cites no authority for the proposition that any delay in his case manifests bias.

complaint, plaintiff filed a first amended complaint.  ECF No. 13. The court construed that first amended complaint as a motion to amend and granted it.  ECF No. 15.  Thereafter, the County once again moved to dismiss the amended complaint, ECF No. 16, and the City, Eissinger, and Duke moved to dismiss, to strike, and for a more definite statement, ECF No. 17.  The court granted the motions to dismiss and granted plaintiff leave to amend some of his claims.  ECF Nos. 33, 35.

Then, on October 19, 2011, plaintiff filed a second amended complaint.  ECF No. 38. The County moved to dismiss, ECF No. 40, as did the City, Eissinger, and Duke, ECF No. 39. Again, the court granted the County's motion to dismiss and dismissed the claims against the County without leave to amend.  ECF Nos. 50, 56.  The court also granted the City defendants' motion to dismiss, dismissed plaintiff's state law claims against those defendants without leave to amend, and dismissed plaintiff's *Monell* claims against the City and plaintiff's federal claims against Eissinger and Duke with leave to amend.  *Id.*

On July 25, 2012, plaintiff filed a third amended complaint herein.  ECF No. 57.  Plaintiff also filed another complaint against the City of Lake Tahoe; Douglas County, Nevada; El Dorado County, California; Robert K. Priscaro; and City of Lake Tahoe Officers Jake Herminghaus, Shannon Lacey, and Andrew Eissinger, alleging a claim under 42 U.S.C. § 1983 against all of the defendants and a defamation claim against Douglas County.  *See* 2:12-cv-526-KJM-EFB*, Compl., ECF No. 1.  In both actions, each defendant moved to dismiss.

In the first action, the court granted the individual defendants' and County's motions to dismiss relating to plaintiff's state law claims without leave to amend.  ECF No. 73 at 10; ECF No. 78.  The court granted the City's and the individual defendants' motions to dismiss with leave to amend.  Specifically, plaintiff was permitted to amend his § 1983 *Monell* claim against the City and his § 1983 claim against defendants Eissinger and Duke.

As for the second action, the court granted Douglas County's motion to dismiss without leave to amend.  ECF No. 73 at 16-19; ECF No. 78.  The court granted El Dorado County's

1    motion to dismiss relating to the claim against Robert Priscaro for malicious prosecution, and the

2    claim against El Dorado County for excessive bail, without leave to amend.  The court granted

3    El Dorado County's motion to dismiss relating to the incident at the El Dorado county jail with

4    leave to amend that claim in the instant action, and granted the individual defendants' motion to

5    dismiss as duplicative of those claims in the first action.  *Id.* at 23-26.  The court closed the

6    second case but stated that plaintiff would be permitted to include in any fourth amended

7    complaint in this action, his § 1983 claims against defendants Herminghaus and Laney and/or a

8    § 1983 Monell claim El Dorado County based only on the County's alleged failure to provide

9    him water while in the County jail.  ECF No. 78 at 2.

10        Plaintiff then filed a fourth amended complaint herein against the City, the County,

11   Eissinger, Duke, Laney, and Herminghaus.  ECF No. 79.  All defendants now move to dismiss

12   that complaint.

13   III.   <u>FACTUAL ALLEGATIONS</u>

14        Plaintiff's fourth amended complaint asserts claims under U.S.C. § 1983 against the City,

15   the individual officers, and the County.  4th Am. Compl. (4AC), ECF No. 79.  Plaintiff suggests

16   that each defendant violated his Eighth Amendment right to be free from excessive bail, and his

17   Fifth and Fourteenth Amendment rights to due process.  *Id.* at 2.  Additionally, he suggests that

18   the City and the individual defendants violated his Fourteenth Amendment right to equal

19   protection.  *Id.* at 2.  The underlying basis for this action are three separate incidents: (1) the

20   "Dog Bite Incident," (2) the "Brick Incident," and (3) an incident at the El Dorado County Jail.

21   *Id.* at 6-15.

22        Plaintiff refers to the first incident as the "Dog Bite Incident."  *Id.* at 3.  Plaintiff alleges

23   that on March 18, 2010, he was bitten by a dog belonging to James Handley, and when he

24   informed Mr. Handley of the bite, Mr. Handley "fled from the grocery store [on a skateboard]

25   taking the dog with him before [plaintiff] could obtain the dog's vaccination information."  *Id.* at

26   3, 5.  Plaintiff contends that he "had no choice but to detain the dog owner with whatever method

5

[he] deemed reasonable." *Id.* at 4.  Plaintiff chased Handley on his bicycle and because Handley

"refused to stop" plaintiff "pushed [his] bicycle against [Handley]" and thereafter Handley

dropped his skateboard. *Id.* at 5.  Plaintiff then grabbed the skateboard and waited for the police,

along with Mr. Handley. *Id.*  Plaintiff alleges that when Officers Eissinger and Duke arrived he

was sitting down with the skateboard. *Id.* at 3, 5.  Officer Eissinger interviewed Mr. Handley

and a woman witness together while Duke interviewed plaintiff alone. *Id.* at 3-5.  The female

witness and Mr. Handley's stories differed from plaintiff's. *Id.*

Plaintiff alleges that at some point Officers Duke and Eissinger spoke, and during this

conversation Officer Eissinger "explained to [Officer] Duke that with [the] woman witness" they

could frame plaintiff, and that Officer Duke agreed to do so. *Id.* at 3.  Plaintiff contends that the

officers "deliberately ignored the witness" from the grocery store who had called 911, and then

arrested plaintiff. *Id.* at 4.  Plaintiff further alleges that Officer Eissinger "knew that [Mr.

Handley] was lying because he had attempted to avoid responsibility for the dog bite." *Id.* at 3.

Additionally, Officer Eissinger knew that the woman witness "had no understanding of the law"

nor knew what had happened before she saw the two men. *Id.*  At the police station, plaintiff

contends that he witnessed Officer Duke "type false charges" and Officer Eissinger stood behind

Officer Duke and "provided [Officer] Duke with further instructions about what charges were

being alleged against [plaintiff.]" *Id.* at 4.  According to plaintiff, he was charged with two

felonies and a misdemeanor even though the officers were in possession of "police reports that

revealed their knowledge of [plaintiff's] innocence." *Id.*  Plaintiff alleges that the next morning

Officer Eissinger submitted a written declaration to the "local court" in which "[Officer]

Eissinger knowingly omitted . . . information that demonstrated [plaintiff's] innocence." *Id.*

Plaintiff contends that through this declaration containing "misleading statements, [*sic*] and lies,"

Officer Eissinger intended "to use lies and false charges to cause excessive bail, and thus cause

financial injury to . . . [plaintiff,]" and as a result plaintiff's bail was increased from $50,000 to

$80,000 without giving plaintiff "access to the local court." *Id.* at 5.

1        Plaintiff refers to the second incident as the "Brick Incident." *Id.* at 6.  Specifically, he

2 claims that on August 28, 2011, a man named Gary Corniel entered plaintiff's garage and

3 threatened plaintiff with two bricks.  *Id.* at 6-8.  Plaintiff alleges that three officers arrived:

4 Officer Eissinger, Officer Laney, and Officer Herminghaus.  *Id.*  Plaintiff contends that upon

5 their arrival, he informed Officer Laney that plaintiff had filed suit against Officer Eissinger in

6 federal court for framing him and upon learning this information Officer Laney "decided to

7 frame [plaintiff] again." *Id.* at 6.  Thereafter, Officer Laney told Officer Herminghaus to

8 interview Mr. Corniel and his friends and at that time "there was a mutual understanding

9 between [O]fficer Herminghaus and . . .[Officer] Laney that [plaintiff] was to be framed." *Id.*

10 Plaintiff alleges that Officers Laney and Herminghaus disregarded plaintiff's story, the physical

11 evidence corroborating his story, and other "impartial" witnesses who corroborated his story, and

12 instead chose to believe the stories of Mr. Corniel and the other witnesses – who were female.

13 *Id.* at 6-9.  Plaintiff alleges that despite knowing that plaintiff was innocent and that he had a

14 viable claim of self defense,  *id.* at 7-8,  and despite Officer Herminghaus' knowledge that "[Mr.]

15 Corniel and his friends were lying," *id.* at 8, "both [Officers Laney and Herminghaus agreed that

16 [plaintiff was going to be] charged with committing crimes," *id.* at 7, and he was therefore

17 framed. *Id.* at 7, 9 (discussing Officer Laney's and Herminghaus' plan to frame him).

18        According to plaintiff, both the Dog Bite Incident and the Brick Incident[4] demonstrate

19 that the City has an unconstitutional policy of extracting excessive bail by having officers lie so

20 that bail is higher; an unconstitutional policy of violating due process by lying about what occurs

21 and not providing the accused an opportunity to oppose those lies; and an unconstitutional policy

22 of discriminating against men by relying upon female witnesses' statements over male

23

24       [4]  Plaintiff also references a third incident, occurring in 2004 in which plaintiff was
arrested in Douglas County, Nevada and was held in custody until 2009 (the "Bargas Incident").
25 However, plaintiff has not alleged that conduct demonstrated a policy or custom by the City of
South Lake Tahoe; he only alleges that there is a pattern in that general geographic region.  4AC
26 at 10.

witnesses' statements.[5]  *Id.* at 2, 10-11, 16.  Plaintiff contends that each time plaintiff has been framed, the same methods have been used: the officers use lies against plaintiff, ignore exculpatory evidence, and use false felony allegations to create excessive bail.  *Id.* at 2, 16.  He contends that these practices are "widespread throughout the [the City] Police Department."  *Id.* at 15.  Plaintiff also lists six officers who have been involved in framing plaintiff: Eissinger, Duke, Herminghaus, Laney, as well as Josh Adler and Brian Williams.  *Id.* at 14-15.  Plaintiff alleges that the City has been negligent by failing to properly train its officers and has failed to properly discipline its officers.  *Id.* at 12-15.

Plaintiff's claim against the County centers around an incident at the county Jail. Plaintiff alleges that while being processed at the jail he felt dehydrated, that officers there denied his request for water, and that as a result he fainted.  *Id.* at 15.  According to plaintiff, while being finger printed he again asked for water but it was denied.  *Id.*  Instead, an officer "held . . . plaintiff's right arm twisted behind [his] back, while another . . . officer bent . . . plaintiff's left wrist to inflict pain."  *Id.*  As a result, plaintiff fainted a second time and when he awoke he was in a cell and his right shoulder was injured.  *Id.* at 15-16.

/////

/////

/////

---

[5] Plaintiff also includes a section entitled "WOMEN WITNESSES."  4AC at 12. However, since the allegations therein relate to his allegations regarding gender discrimination the court does not read that as a separate City policy or custom.  Additionally, he also states in that section that in both instances "the police unjustly took upsides with women witnesses while knowing [plaintiff] was innocent."  *Id.*  Because these allegations appear to relate to the alleged attempts by the individual defendants to frame plaintiff, this court does not read this section as a separate policy or custom by the City, or a separate cause of action or allegation against the individual defendants.  Last, plaintiff includes a section entitled "LAWFUL USE OF DETERRENTS."  *Id.* at 12-13.  Apart from appearing as a factual statement instead of an allegation against either the City or the individual defendants, that section discusses the alleged viable claims of self-defense in the two instances in which he was allegedly framed by the individual defendants.  *Id.*  Because this appears to be part of the narrative regarding the instances in which he was allegedly framed, the court does not read this as a separate allegation or cause of action.

IV.     MOTIONS TO DISMISS

    A.     Rule 12(b)(6) Standards

    To survive dismissal for failure to state a claim pursuant to Rule 12(b)(6), a complaint must contain more than a "formulaic recitation of the elements of a cause of action"; it must contain factual allegations sufficient to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  "The pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." *Id.* (quoting 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1216, pp. 235-236 (3d ed. 2004)).  "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Aschroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 570).  "A claim has facial plausibility when plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  Dismissal is appropriate based either on the lack of cognizable legal theories or the lack of pleading sufficient facts to support cognizable legal theories.  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

    In considering a motion to dismiss, the court must accept as true the allegations of the complaint in question, *Hospital Bldg. Co. v. Rex Hosp. Trs*., 425 U.S. 738, 740 (1976), construe the pleading in the light most favorable to the party opposing the motion, and resolve all doubts in the pleader's favor.  *Jenkins v. McKeithem*, 395 U.S. 411, 421, *reh'g denied*, 396 U.S. 869 (1969).  The court will "presume that general allegations embrace those specific facts that are necessary to support the claim.'" *Nat'l Org. for Women, Inc. v. Scheidler*, 510 U.S. 249, 256 (1994) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)).

    Pro se pleadings are held to a less stringent standard than those drafted by lawyers. *Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Bretz v. Kelman*, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985).  The Ninth Circuit has held that the less stringent standard for pro se parties is now higher in light of *Iqbal* and *Twombly*, but the court still continues to construe pro se filings liberally.

*Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010).  However, the court's liberal interpretation of a pro se litigant's pleading may not supply essential elements of a claim that are not plead.  *Pena v. Gardner*, 976 F.2d 469, 471 (9th Cir. 1992); *Ivey v. Bd. of Regents of Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982).  Furthermore, "[t]he court is not required to accept legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged."  *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994).  Neither need the court accept unreasonable inferences, or unwarranted deductions of fact.  *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981).

In deciding a Rule 12(b)(6) motion to dismiss, the court may consider facts established by exhibits attached to the complaint.  *Durning v. First Boston Corp.*, 815 F.2d 1265, 1267 (9th Cir. 1987).  The court may also consider facts which may be judicially noticed, *Mullis v. U.S. Bankr. Ct.*, 828 F.2d at 1338, and matters of public record, including pleadings, orders, and other papers filed with the court.  *Mack v. South Bay Beer Distribs.*, 798 F.2d 1279, 1282 (9th Cir. 1986).

B.     Claims Against El Dorado County

It is not entirely clear from the complaint what plaintiff's allegations are against the County for his injuries sustained while in custody at the county jail.  However, affording plaintiff some lenity, it appears he is suggesting either that the County has failed to train its officers to provide water to individuals in custody at the jail, or that the County has an unconstitutional policy of not providing water to individuals in custody.  *See* 4AC at 15-16.  He asserts that he was denied water by officers at the jail and, when he awoke, he had an injured shoulder.  *Id.* However, plaintiff admits that "he cannot describe exactly what [the County] jail employees" did while he was unconscious.  *Id.* at 16, *see* Pl.'s Opp'n to Cnty.'s Mot. to Dismiss ("Pl.'s Cnty. Opp'n"), ECF No. 82 at 2.  Essentially, plaintiff alleges a *res ipsa loquitor* theory of liability against the County.

/////

1    In its motion to dismiss, the County contends that the only thing relating to a possible

2   *Monell* claim by plaintiff is that the County failed to properly train its officers to provide water

3   to individuals while in custody at the county jail.  Def. El Dorado Cnty. Mot. to Dismiss ("Cnty.

4   Mot. to Dismiss"), ECF No. 80-1 at 7.  However, the County argues that plaintiff's allegations

5   "do not even rise to the level of threadbare allegations tracking the *Monell* requirements, which

6   the court has already admonished would be insufficient."  *Id.*

7    As previously explained to plaintiff, because there is no *respondeat superior* liability

8   under 42 U.S.C. § 1983, municipalities may be sued under § 1983 only upon a showing that an

9   official policy or custom caused the constitutional tort.  *Monell v. Dep't of Soc. Servs.*, 436 U.S.

10   658, 691 (1978).  The first requirement of *Monell* is that "plaintiff must identify a 'policy' or

11   'custom' that caused the plaintiff injury."  *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 403

12   (1997) (citing *Monell*, 436 U.S. at 694; *Pembaur v. Cincinnati*, 475 U.S. 469, 480-81 (1986);

13   *City of Canton v. Harris*, 489 U.S. 378, 389 (1989)).  In justifying the imposition of liability for

14   a municipal custom, the Supreme Court has noted that "an act performed pursuant to a 'custom'

15   that has not been formally approved by an appropriate decisionmaker may fairly subject a

16   municipality to liability on the theory that the relevant practice is so wide-spread as to have the

17   force of law."  *Id*. at 404 (citing *Monell*, 436 U.S. at 690-91).  Additionally, a custom or practice

18   can be "inferred from widespread practices or 'evidence of repeated constitutional violations for

19   which the errant municipal officers were not discharged or reprimanded.'"  *Nadell v. Las Vegas*

20   *Metro. Police Dep't*, 268 F.3d 924, 929 (9th Cir. 2001) (quoting *Gillette v. Delmore*, 979 F.2d

21   1342, 1349 (9th Cir. 1992)); *see also Menotti v. City of Seattle*, 409 F.3d 1113, 1147 (9th Cir.

22   2005); *McRorie v. Shimoda*, 795 F.2d 780, 784 (9th Cir. 1986).  "A policy is a deliberate choice

23   to follow a course of action . . . made from among various alternatives by the official or officials

24   responsible for establishing final policy with respect to the subject matter in question."  *Long v.*

25   *Cnty. of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006).  Alternatively, a single act of a

26   policymaker in some instances can be sufficient for a Monell claim when "the decisionmaker

possesses final authority to establish municipal policy with respect to the action ordered."
*Pembaur*, 475 U.S. at 481-82.

As for a claim of inadequacy of police training, such a failure may serve as the basis for § 1983 liability against a municipality where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact. *City of Canton*, 489 U.S. at 388. "Deliberate indifference" is established where "'the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." *Clouthier v. County of Contra Costa*, 591 F.3d 1232, 1249 (9th Cir. 2010) (quoting *City of Canton*, 489 U.S. at 390). However, to survive a motion to dismiss, a plaintiff alleging Monell liability based on lack of training must allege that: (1) he was deprived of a constitutional right; (2) the local government entity had a training policy that amounts to deliberate indifference to constitutional rights of persons with whom its peace officers are likely to come into contact; and (3) his constitutional injury would have been avoided had the local government unit properly trained those officers. *See Lanier v. City of Fresno*, 2010 WL 5113799 at *11-12 (E.D. Cal. Dec. 9, 2010).

In its last findings and recommendations the court found that plaintiff did "not allege[] any County policy or custom relating to withholding water from jail inmates." ECF No. 73 at 23. While noting that the court had "provided specific instructions in the first action regarding how to state a *Monell* claim against [the County]," *id.*, and that "plaintiff's failure to address the *Monell* requirements . . . suggests he cannot do so," *id.* at 24, the court nevertheless provided plaintiff with the opportunity to amend his complaint with respect to the allegations that he was deprived water by the County jail. *Id.* Plaintiff's latest attempt fares no better than the last.

Again, plaintiff has not alleged a County policy or custom to deprive individuals of water while in custody at the jail. He has not identified any County officials who made a deliberate choice to deprive individuals of water while in custody at the jail, *see Long,* 442 F.3d at 1185,

12

nor has he identified any previous instances of individuals being deprived of water at the jail such that this court can infer that the practice of depriving individuals of water while in custody "is so wide-spread as to have the force of law." *Brown*, 520 U.S. at 404. Thus, because plaintiff does not allege facts sufficient to show a municipal custom of depriving individuals of water while in custody, he has not plead a plausible *Monell* claim against the County.

Nor has plaintiff stated a plausible claim for failure to train because he has not alleged any facts that amount to deliberate indifference to the rights of persons with whom the County jail employees have come into contact. *See City of Canton*, 489 U.S. at 388. As noted, because in both plaintiff's complaint and response he admits he does not know what happened to his shoulder at the jail, the only way for plaintiff to succeed would be on a *res ipsa loquitor*[6] theory of liability. "In other words, despite failing to allege an affirmative act (or omission) on the part of any specific [d]efendant, Plaintiff appears to contend that, because these individuals were on duty at the relevant time [at the County Jail], [the jail employees] must have played some role in the alleged events." *English v. Murphy*, 2013 WL 1465321 at *5 (M.D.N.C. Apr. 11, 2013). However, the doctrine of *res ipsa loquitor* cannot be used to prove "deliberate indifference." *See Clark–Murphy v. Foreback,* 439 F.3d 280, 286 (6th Cir. 2006) (holding that *res ipsa loquitor* could not be used to prove deliberate indifference because the standard is not negligence) (emphasis in original); *Hunt ex rel. Chiovari v. Dart,* 754 F. Supp. 2d 962, 977 (N.D. Ill. 2010) ("[T]he [*res ipsa loquitor*] doctrine is confined to negligence cases . . . and this is a constitutional tort case in which the plaintiff must prove intent.") (emphasis in original) (citing *Aguirre v.*

---

[6] "Under that ancient doctrine [of *res ipsa loquitor*]—'the thing speaks for itself'—the manner in which an incident occurred permits an inference that it was caused by the defendant's negligence." *Hunt ex Rel*, 754 F. Supp. 2d at 977. "It is generally stated that to invoke the doctrine of res ipsa loquitur the following three elements must be established: (1) an injury-producing event of a kind that ordinarily does not occur in the absence of someone's negligence; (2) the event must be caused by an agency or instrumentality within the exclusive control of the defendant; and (3) the event must not have been due to any voluntary action or contribution on the part of the plaintiff." *Reber v. United States*, 951 F.2d 961, 964 n. 1 (9th Cir. 1991)

*Turner Const. Co.*, 582 F.3d 808, 810–11 (7th Cir. 2009), and *County of Sacramento v. Lewis*, 523 U.S. 833, 849 (1998)); *Gast v. Singleton*, 402 F. Supp. 2d 794, 799-800 (S.D. Tex. 2005) ("Neither the Supreme Court nor the Fifth Circuit has ever held that *res ipsa loquitur* may serve as a basis for municipal liability under § 1983."); *Gonzalez v. City of Fresno*, 2009 WL 2208300 at *8 (E.D. Cal. July 23, 2009) ("*Res ipsa loquitur* has no application in a civil rights case.") (emphasis in original); *Spears v. Meeks*, 2011 WL 1563062 at *5 (M.D. Ala. Apr. 26, 2011) ("[A] plaintiff may not resort to [*res ipsa loquitor*] to state a plausible § 1983 claim for deliberate indifference.").  Accordingly, because plaintiff does not alleged sufficient facts to show that the County jail employees acted with deliberate indifference to his rights, and *res ipsa loquitor* is not available to prove "deliberate indifference" as a matter of law, plaintiff has failed to plead a factually or legally cognizable failure to train theory against the County.  *Balistreri*, 901 F.2d at 699.

In short, given that plaintiff has provided no facts to allow this court to reasonably infer that there was a County policy or custom to deprive individuals of water, nor has he provided facts to allow this court reasonably infer that the County jail employees were not trained to provide individuals in custody with water, plaintiff has not plead a plausible *Monell* claim against the County.

As noted by the County, this is plaintiff's "fifth bite at the apple spanning two separate lawsuits" to plead a cognizable theory for relief against the County.  ECF No. 80 at 9.  Plaintiff's inability to follow the court's instructions to allege a proper *Monell* claim against the County, and his own admission that he cannot plead any other facts to indicate how he was injured while at the county jail, *see* ECF No. 81 at 2, suggests that further leave to amend would be futile.  *See Ferdik v. Bonzelet*, 963 F.2d 1258, 1260-61 (9th Cir. 1992); *see also Jimenez v. Sullivan*, 2008 WL 4005940, at *3 (E.D. Cal. Aug. 27, 2008) ("[p]laintiff was already given an opportunity to cure the deficiencies identified by the court in its prior order and she was unable to do so.

/////

1   Thus, it appears granting leave to amend the complaint would be futile").  Therefore, plaintiff's

2   claims against the County should be dismissed without further leave to amend.

3       C.      Claims Against City of South Lake Tahoe

4           In his complaint, plaintiff appears to allege that the City has an unconstitutional policy

5   of: (1) framing individuals to obtain excessive bail, (2) lying about what occurs and not

6   providing the accused an opportunity to oppose those lies, and (3) discriminating against men by

7   believing female witnesses' stories and disregarding the stories of male witnesses.  4AC at 2, 10-

8   11, 16.  Additionally, plaintiff alleges that the City has been negligent by failing to properly train

9   its officers and has failed to properly discipline its officers.  *Id.* at 12-15.

10          The City alleges that "[i]n both his 3AC and his most recent complaint, his 4AC,

11  [p]laintiff fails to allege sufficient facts that even establish the first requirement of a *Monell*

12  claim – an identifiable policy or custom – much less establish the remaining three requirements."

13  City Mot. to Dismiss, ECF No. 81-1 at 4.  According to the City, "[p]laintiff has not pointed to a

14  single policy, custom or pattern in support of his claims."  *Id.* at 3.

15          In the court's last findings and recommendations, this court told plaintiff he "must (1)

16  identify the challenged policy or custom; (2) explain how the policy or custom is deficient; (3)

17  explain how the policy or custom caused the plaintiff harm; and (4) reflect how the policy or

18  custom amounted to deliberate indifference, i.e. show how the deficiency involved was obvious

19  and the constitutional injury was likely to occur."  ECF No. 73 at 11.  The court reminded

20  plaintiff that the court had previously instructed him to "articulate more than threadbare

21  allegations that simply track the *Monell* claim requirements."  *Id.* (citing ECF No. 50 at 16 and

22  *Iqbal*, 129 S. Ct. at 1949).  This court went on to find that plaintiff's "vaguely allege[d] . . .

23  overlapping municipal 'customs'" and conclusory allegations failed to satisfactorily state a

24  *Monel* claim, but again granted plaintiff leave to amend his complaint.  ECF No. 73 at 10-14.

25  Plaintiff again has failed to heed this court's instructions.

26  /////

1    This court's analysis in the previous findings and recommendations addresses the

2  inadequacy of plaintiff's fourth amended complaint here: "[A]s with plaintiff's [third] amended

3  complaint, his [fourth] amended complaint does not allege a formal policy or official custom.

4  Nor does the complaint allege that a policymaker acted against . . . plaintiff.  Rather, plaintiff

5  appears to be alleging that the conduct he complains of regarding his law enforcement contacts

6  during the two incidents necessarily amounts to a custom/policy because there was widespread

7  participation in the conduct, and police training was inadequate."  ECF No. 73 at 11.

8    With respect to plaintiff's allegation that the two instances in which plaintiff was

9  allegedly framed is evidence of a widespread practice of framing individuals, plaintiff has again

10  failed to plead a plausible claim for relief.  First, plaintiff's bare allegation that these practices

11  are "widespread throughout [the City] Police Department," 4AC at 15, is insufficient to show

12  that the alleged policy of framing individuals is "so wide-spread as to have the force of law,"

13  *Brown*, 520 U.S. at 404 (citing *Monell*, 436 U.S. at 690-91), because "[t]he court is not required

14  to accept legal conclusions cast in the form of factual allegations if those conclusions cannot

15  reasonably be drawn from the facts alleged."  *Clegg*, 18 F.3d at 754-55.  The court simply cannot

16  reasonably infer that there is a widespread practice of framing individuals based on conclusory

17  allegations relating to the idiosyncratic practices of six individual officers spanning two

18  instances in which plaintiff himself was involved.

19    As the court previously stated, when boiled down to it factual core, the complaint is

20  based on two incidents – the Dog Bite Incident and the Brick Incident.  In the first incident,

21  plaintiff alleges that Officers Eissinger and Duke responded to a complaint, and in the second

22  instance, Officers Laney and Herminghaus responded.  Both instances share the following

23  characteristics: (1) the officers listened to the other party involved in the incident and the third

24  party female witness and believed them instead of plaintiff; (2) the officers knew, or should have

25  known, that plaintiff was either innocent or had a viable claim of self-defense; (3) the officers

26  decided to frame plaintiff by using the other witnesses version of the facts--which plaintiff

characterizes as lies and false charges--against him; and (4) the result of this "framing" was that

plaintiff was required to pay excessive bail.  The first and most obvious deficiency is the

conclusory nature of the allegations – post *Iqbal,* these allegations cannot form the basis of the

complaint.  Furthermore, as the court noted in the last findings and recommendations: "[s]etting

aside plaintiff's conclusory characterizations, the specific facts that he describes hardly

demonstrate a widespread practice of the City's police department of using lies to frame accused

defendants.  Rather, he articulates facts showing two encounters with law enforcement, both of

which occurred when officers responded to altercations in which plaintiff was involved.  By

plaintiff's own description, the officers listened to the witnesses and relied on the statements of

the other witnesses rather than accepting plaintiff's account of what happened.  An officer

relying on and reporting the statements of witnesses to the event does not demonstrate a policy,

custom or widespread practice of framing defendants or using lies to extract excessive bail.

Plaintiff's conclusory characterizations of the events in that manner simply do not meet the

pleading requirement of *Iqbal*."  ECF No. 73 at 13.

    As for the other policies referenced in plaintiff's fourth amended complaint, again

plaintiff has done nothing more than "vaguely allege[] several overlapping municipal

"'customs.'"  *Id.*  Plaintiff has not identified a decisionmaker who made a deliberate choice to

have policies to: (1) frame individuals to obtain excessive bail, (2) lie about what occurs and not

provide the accused an opportunity to oppose those lies, and (3) discriminate against men by

believing female witnesses' stories and disregarding male witnesses' stories.  *See Long,* 442 F.3d

at 1185.  Nor has he pointed to anything other than the two instances in which he was involved

to suggest there was a widespread practice throughout the City police department to: (1) frame

individuals to obtain excessive bail, (2) lie about what occurs and not providing the accused an

opportunity to rebut those lies, and (3) discriminate against men by believing female witnesses'

stories and disregarding male witnesses' stories.  *See Brown*, 520 U.S. at 404.  While plaintiff

has expanded his narrative by adding additional facts to describe the two instances in which he

17

was allegedly framed, these additional facts have done nothing to "raise a right to relief above the speculative level" in his fourth amended complaint. *Twombly*, 550 U.S. at 555. In light of the numerous opportunities plaintiff has been given to properly allege a *Monell* claim against the City, and his failure to do so, it appears that further leave to amend would be futile. *Ferdik*, 963 F.2d at 1260-61; *Jimenez*, 2008 WL 4005940, at *3. Therefore, plaintiff's claims against the City should be dismissed without further leave to amend.

> D.     Claims Against Individual Defendants Eissinger, Duke, Laney, and Herminghaus

Plaintiff also alleges in his fourth amended complaint that the individual defendants framed plaintiff in order to extract excessive bail from him. 4AC at 3-10. As noted above, plaintiff claims that both the Dog Bite Incident and the Brick Incident share the following characteristics: (1) the officers believed the other party involved in the incident and the female witness instead of plaintiff; (2) the officers knew, or should have known, that the plaintiff was either innocent or had a viable claim of self-defense; (3) the officers decided to frame plaintiff by using lies and false charges against him; and (4) that the result of this "framing" was that plaintiff was required to pay excessive bail. *Id.*

The individual defendants claim that plaintiff's fourth amended complaint does not comply with Federal Rules of Civil Procedure 8(a) and 10(b). *See* ECF No. 81 at 7-8. Specifically, the individual defendants argue with respect to Rule 8(a), plaintiff "fails to provide a short and plain statement of his claims against the City [d]efendants but instead has added facts, vaguely proffered arguments related to due process, and ranted about obscure chains of events," *id.* at 7, and therefore the individual defendants "cannot provide meaningful responses beyond conjecture as to what [p]laintiff is actually claiming against either [d]efendant," *id.* With respect to Rule 10(b), the individual defendants argue that plaintiff "does not set forth his claims using clear headings to delineate each claim or against which [d]efendant he alleges," "does not plead clear facts that support each claim under clear, discrete headers," and "does not refer back

/////

to his allegations in [the introduction] that his 4th, 5th, 8th and 14th Amendment rights have been violated." *Id.* at 7-8.  The individual defendants' arguments are well taken.

The findings and recommendations with respect to the third amended complaint admonished plaintiff as to the specific requirements under *Iqbal* for alleging facts specific enough to demonstrate a cause of action.  Additionally, in the findings and recommendations addressing plaintiff's second amended complaint, the court found that plaintiff's "complaint fails to comply with Rules 8 and 10, primarily because plaintiff's complaint does not clearly allege the basis for plaintiff's federal claims against defendants Eissinger and Duke."  ECF No. 50 at 15.  Plaintiff's fourth amended complaint has similar deficiencies.

While plaintiff has clearly attempted to comply with the directives from the court, plaintiff's fourth amended complaint still falls short of the requirements of Rules 8 and 10 as well as this court's Local Rules.  While plaintiff has numbered paragraphs, they are extremely long.  For instance, in his section entitled "COMPLAINT AGAINST DEFENDANT ANDREW EISSINGER," plaintiff has a paragraph with 69 lines.  *See* 4AC at 3-4.  There are similar examples of this throughout his fourth amended complaint.  The length of these paragraphs makes it difficult for the individual defendants to accurately answer the complaint, or even to ascertain which claims are asserted as to which defendants..

Apart from the sheer length of some of the paragraphs, plaintiff's allegations do not clearly identify the constitutional violations that plaintiff is alleging against the individual defendants.  First, plaintiff does not clearly delineate what constitutional provisions apply to each of his allegations against the individual defendants.  For instance, in the same section above, plaintiff alleges that "[Officer] Eissinger knew that his words were false," that he watched while "[Officer] Duke . . . typed false charges that would be alleged against [plaintiff]," that in a declaration to the local court "[Officer] Eissinger knowingly omitted the information that demonstrated [plaintiff's] innocence," and last that Officer Eissinger's intent was "to use lies and false charges to cause excessive bail, and thus cause financial injury to the plaintiff." *Id.* at 4-5.

1   The complaint is replete with allegations in the same form.

2       Furthermore, plaintiff does not clearly delineate which individual defendants are alleged

3   to be responsible for each constitutional violation, or whether the City was responsible for the

4   purported constitutional violations.  Further down in the complaint, plaintiff has headers that

5   include "GENDER DISCRIMINATION," "NO POLICE TRAINING OR DISCIPLINE,"

6   "WOMEN WITNESSES," "LAWFUL USE OF DETERRENTS," and more.  *Id.* at 10-12.

7   However, within these sections, plaintiff makes references to the individual officers as a group,

8   rather than clearly identifying which officer is responsible for each violation, or whether the City

9   was responsible for each violation.  Again, these above stated deficiencies make it difficult for

10  the defendants to accurately answer the complaint.

11      Thus, the court finds that plaintiff has not complied with Rules 8 and 10.  However, given

12  that plaintiff has at least attempted to comply with Rules 8 and 10 in his last amended complaint,

13  it suggests that further amendment would not be futile.  Accordingly, this court finds that it

14  would be inappropriate at this juncture to dismiss plaintiff's complaint without leave to amend.[7]

15      If plaintiff elects to file another amended complaint, he should be careful to comply with

16  the rules for formatting a complaint in this court.  Plaintiff must make sure that his complaint is

17  "double-spaced except for the identification of counsel, title of the action, category headings,

18  footnotes, quotations, exhibits and descriptions of real property," and that "quotations of more

19  than fifty (50) words [are] . . . indented."  E.D. Cal. L.R. 130(c).  Additionally, plaintiff should

20  make sure that he only alleges the facts necessary to constitute a constitutional violation, and in

21

---

22      [7] Of course, although the complaint may have made it difficult to clearly identify the
constitutional violations against the individual officers, the individual officers could have

23  *attempted* to address the merits of plaintiff's claims.  For instance, while he may not have
identified with specificity the constitutional violations he was alleging, plaintiff was at least

24  suggesting in his complaint that the individual defendants may have violated his Fourth and Fifth
Amendment rights by ignoring his valid claims of self-defense and not giving him access to the

25  courts to rebut the charges the individual defendants made against him.  In doing so, this court
may have found that plaintiff's claim was legally or factually insufficient, and likewise found

26  any further attempts futile.

1   making his factual allegations he should make sure that his *numbered paragraphs* are kept to one

2   to two sentences and refer back to other allegations if necessary.  *See* Fed. R. Civ. Proc 8(a)(1)-

3   (3); *Id.* at 10.  Furthermore, in his headings, or in the body of each section, plaintiff should be

4   careful to identify the *specific* constitutional violation that he is alleging, and identify *specifically*

5   the officer he is alleging the constitutional violation against (e.g., <u>Officer Andrew</u>

6   <u>Eissinger–Violated Plaintiff's 4th Amendment Rights to . . .</u>).  *Id.*  Placing the violations within

7   the introduction section as plaintiff did here, and not referring back to them, is insufficient to

8   satisfy the federal and local rules.  Considering that the next attempt would be plaintiff's sixth

9   attempt at filing a complaint, a failure to comply with the court's instructions may very well

10  result in a dismissal without leave to amend.

11  V.    <u>CONCLUSION</u>

12         Accordingly, IT IS HEREBY ORDERED that plaintiff's motion for recusal of the

13  undersigned, ECF No. 87, is denied.

14         IT IS HEREBY RECOMMENDED that:

15         1.  Defendant El Dorado County's motion to dismiss, ECF No. 80, be granted;

16         2.  Plaintiff's claims against the County be dismissed without leave to amend;

17         3.  The City defendants' motion to dismiss, ECF No. 81, be granted;

18         4.  Plaintiff's claims against the  City be dismissed without leave to amend;

19         5.  Plaintiff's claims against the individual defendants' be dismissed with leave to amend;

20  and

21         6.  Plaintiff be provided thirty days from the date of any order adopting these findings

22  and recommendations is filed to file a fifth amended complaint against the individual defendants

23  as provided herein.

24         These findings and recommendations are submitted to the United States District Judge

25  assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days

26  after being served with these findings and recommendations, any party may file written

objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

Dated:  August 27, 2013.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE